## John Tilton *versus* William Hunter & *al.*

Where a resolve of the Commonwealth of Massachusetts authorized the conveyance of a lot of land, and provided that such conveyance should not " affect the rights or claims of any actual settlers, claiming lands under any title, not derived from the Commonwealth, or by possession merely, against each other; but that all such claimants may pursue their legal remedies as if no such conveyance had been made;" *it was held*, that this provision extended not only to such as were actual settlers upon the land at the time, but to their grantees and assignees.

By the statute commonly called the betterment act, the common law in relation to disseizin is so far altered, that a wood lot, constituting part of a farm, may be subject to a disseizin by the occupant of the farm, if used for the purpose of cutting fuel and getting house-bote and fence-bote therefrom, openly and notoriously, and in a manner comporting with the management of a farm. But the possession must still be open and notorious.

If one, without the knowledge of the owner of the land, causes it to be run out, and a plan made thereof, at the same time claiming it as his own, this does not constitute a disseizin.

The recording of deeds is constructive notice only to those, who would claim under the same grantor.

Trespass *quare clausum*. The plaintiff, as part of his evidence, introduced the deed of Thomas M'Clure. On the

argument of the case, it was contended as matter of fact, that this deed did not include the land whereon the trespass was committed, and that therefore the instructions of the Judge at the trial respecting the effect of that deed were erroneous. A plan was referred to, but was not among the papers of the case. The facts are stated in the opinion of the Court. The *lop and top fence* appeared to have been made by felling trees in such manner, that the top of one should be upon the lower end of another.

The trial was before SHEPLEY J. who instructed the jury, that such a fence across the westerly end of the Tilton lot, without a fence on the northern or southern side of the Hunter lot and so continued and maintained by the defendant, Hunter, as to inclose a tract of land not on any line or bound of his deed but without them, would not constitute a seizin in Hunter and disseizin of the grantors of Tilton, so as to defeat the operation of their deeds; and that this fence, as so built across the Tilton lot, would not operate a disseizin before the erection of the permanent fence from nine to thirteen years prior to that time; and that as Thomas M'Clure, the grantor of Tilton in 1832, was an heir and tenant in common, his deed would convey a seizin to the plaintiff, unless defeated by an adverse possession.

The verdict being for the plaintiff, the defendants filed exceptions to the instructions of the Judge.

*Bulfinch* argued for the defendants, and cited the following authorities. 9 Mass. R. 196; 2 Greenl. 367; 9 Mass. R. 185; 18 Maine R. 436 and 428; 2 Greenl. 287; 1 Greenl. 238; 11 Pick. 140.

*E. Smith* argued for the plaintiff, citing 4 Pick. 159; 5 Pick. 131; 5 Mass. R. 344; 8 Cranch, 249; 4 Mass. R. 416; 14 Pick. 383.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is an action *quare clausum.* The acts set forth as constituting the trespass are not denied. Each

party claims to be the owner in fee of the *locus in quo*. The plaintiff deduces his title thereto through sundry mesne conveyances, the first of which was made in 1811; and these conveyances embrace the premises, without question; and make out a perfect title in the plaintiff, unless controlled by that set up on the part of the defendants.

The defendants claim, first, under a deed of quitclaim, made to their father, whose heirs they are, in 1766, which they contend includes, within the boundaries therein given, the *locus in quo*; secondly, that the same is included in a deed made to them in 1815, by Messrs. Orr & Bailey, as agents of Massachusetts, of which Maine was then a part, in pursuance of certain resolves passed for quieting settlers, &c.; and thirdly, that they have acquired a title by disseizin; or were, at any rate, so seized as to defeat the operation of the deed upon which the plaintiff must depend for the establishment of his title.

The deed of quitclaim, relied upon by the defendants, was of a tract of land extending from Damariscotta river, southeasterly, the south-easterly boundary being a straight line, extending one hundred and thirty rods. How far south-easterly such a line must be placed is not shown by any actual admeasurement laid down on the plan taken by order of Court. It cannot be known, therefore, there being no monuments recognized as showing the south-eastern boundary, that the *locus in quo* is included in that conveyance; and the defendants do not now claim by a straight line for their south-eastern boundary. This point in the defence therefore fails.

The deed of Messrs. Orr and Bailey is next to be considered. The description in that deed is, of "two lots, numbered 138 and 139, in the western division of said town of Bristol, conformably to the plan taken by William M'Clintock, June 12th, 1815." These lots are not laid down on the plan taken by order of Court, or on any plan to which we are referred in the bill of exceptions. Whether they covered the *locus in quo* we have not the means of ascertaining. The defence, therefore, upon this ground was not made out.

Moreover, if the description in the deed of Messrs. Orr and Bailey included the *locus in quo*, it was made under resolves, which provided, that such conveyance should not "affect the rights or claims of any actual settlers, claiming lands under any title, not derived from the Commonwealth, or by possession merely, against each other; but [that] all such claimants may pursue their legal remedies as if no such conveyance had been made." It is contended, however, by the defendants, that this extends only to the claims of actual settlers, at the time of the conveyance, under the resolve, and not to their assignees; but this would, evidently, be a construction altogether too narrow. An actual settler, at that time, and who afterwards conveyed the land, on which he was settled, to another person, without any knowledge of an adverse claim, would surely convey all the rights appertaining to himself; and the grantee would become seized thereof as fully and effectually, to every intent and purpose, as the settler held the same. This position of the defendants, therefore, is clearly untenable.

We come now to the question of title by disseizin. The *locus in quo*, although it is not so expressly represented in the bill of exceptions, was obviously a forest; and in an uncultivated state. The lop and top fence, and the log fence, indicate this; and, if it had ever been under improvement, it would have been so represented. To constitute a disseizin, under such circumstances, decisive acts, tending to a dispossession of him in whom the title might be, must be proved. The common law definitions of a disseizin are collected by Mr. Justice Wilde, in delivering the opinion of the Court in *Bates* v. *Norcross*, 14 Pick. 224. The one quoted from Lord Holt is, that "a bare entry on another, without an expulsion, makes such a seizin only, that the law will adjudge him in possession, that has the right; but it will not work a disseizin or abatement without expulsion;" and the one from C. J. Parsons is, that "to constitute an ouster of him who was seized, the disseizor must have the actual and exclusive occupation of the land, claiming to hold it against him who was seized; or he must actually turn him out of possession." Mr. Justice Wilde,

again, in delivering the opinion of the Court, in *Coburn & al.* v. *Hollis*, 3 Metc. 125, lays down the law to be, that, in order "to make out an adverse possession in ejectment, the tenant must show a substantial inclosure, an actual occupancy, definite, positive and notorious. It is not enough to make what is called a possession fence, merely by felling trees, and lopping them one upon the other round the land." Mr. C. J. Kent, in *Jackson* v. *Schoonmaker*, 2 Johns. R. 230, to constitute a disseizin, says, " there must be a real and substantial inclosure, an actual occupancy, a *possessio pedis*, which is definite, positive and notorious, to constitute an adverse possession, when that is the only defence, and is to countervail a legal title." This was said in a case, where the disseizin set up was by running a lop and top fence round the land, which was held to be insufficient for the purpose; and it has been often so held in this State and Massachusetts.

By the statute of this State, however, commonly called the betterment law, it is provided, that, to constitute disseizin, "it shall not be necessary that such lands shall be surrounded with fences, or rendered inaccessible by water, but it shall be sufficient, if the possession and improvement are open and notorious, and comporting with the ordinary management of a farm, although that part of the same, which composes the woodland, belonging to such farm, and used therewith as a wood lot, shall not be inclosed." By this enactment the common law may be considered so far altered as that a wood lot, constituting a part of a farm, may be subject to a disseizin by the occupant of the farm, if used for the purpose of cutting fuel, and getting housebote and fencebote therefrom, openly and notoriously, and in a manner comporting with the management of a farm. That the possession must still be open and notorious is not abrogated, but expressly retained.

Now what are the facts in the case at bar to bring it within those principles? The first is, that, in 1775, the ancestor of the defendants, being in possession of a tract of land, supposing the *locus in quo* to be a part of it, felled a lop and top fence across the land, afterwards claimed by a person, under

whom the plaintiff claims to have derived his title. It was intended probably to mark out the southeasterly boundary of the land, as purchased by the defendant's ancestor. This fence did not inclose any land; and could not have been made with a view to an occupation and improvement of the land. In 1802 it had decayed, and a new one was made, of a similar nature, but about forty rods distant from the former. This inclosed nothing, and only ran across the land now claimed by the plaintiff; and, from 9 to 13 years ago, a log fence was built, nearly on the same line. The case does not find that this completed an inclosure of any land. These, then, according to the common law authorities, could not amount to a disseizin; and did not amount, in the language of the statute, to an open, notorious possession and improvement, such as comports with the ordinary management of a farm. Running a lop and top fence through a region of forest, without any connexion with any other fence, so as to make an inclosure, cannot be believed to comport with the ordinary management of a farm; and, as to notoriety, it does not appear, that any adverse claimant had any knowledge of the existence of either of the fences; or, if he had, that he had any knowledge of who erected them, or with what design they were placed there. No acts of cutting of wood or timber on the *locus in quo* are proved, anterior to the trespass complained of.

But it is said that in 1814 the defendants caused the land to be run out, as claimed by them, corresponding nearly with the log fence, and a plan to be made, &c. This however was an *ex parte* proceeding, of which the plaintiff had no knowledge, and therefore could not be concluded by it. This neither came within the common law or statute as constituting a disseizin.

Again, it is said, that the two deeds under which the defendants claim, were on record, and were constructive notice, that the defendants claimed the *locus in quo*. To this two answers may be given. The first is, that it does not appear, that, upon an accurate running out of the land, the *locus* would be embraced within its limits; the second is, that the

Tilton *v.* Hunter.

recording of deeds is constructive notice only to those, who would claim under the same grantor. *Little* v. *Megquier*, 2 Greenl. 178 ; *Bates* v. *Norcross*, before cited.

The seizin in this case might have been sufficient, on the part of the defendants, to enable them to maintain an action of trespass against one, who had no pretence of claim to the land, or to have authorized the plaintiff to have declared against them in a plea of land, as disseizors, if he had elected so to do; but by no means amounts to such an adverse possession as would, in law, ever have ripened into a title by disseizin; and therefore did not preclude the deed of Murdock, as guardian, from passing the fee to the plaintiff. The deed of Thomas M'Clure, therefore, was of no importance, and may be laid out of the case; and what was said by the Judge in his instructions to the jury, in reference to it, may be considered as immaterial, and as forming no ground of exceptions.

The argument of the counsel for the defendants, concerning a claim for betterments, was wholly irrelevant. The exceptions do not show that any such claim was ever made. The Judge, in his charge and ruling, does not appear to have noticed any thing of the kind.

*Exceptions overruled.*