CASE 31————SEPTEMBER 19.

## Greer, &c. vs. Powell, &c.

APPEAL FROM CAMPBELL CIRCUIT COURT.

A sale of attached property, made by the sheriff, under an order issued in vacation by the presiding judge of the county court, (*Civil Code, sec.* 239,) is not final and complete without a report by the officer, and its confirmation by the circuit court in which the attachment is pending, which has jurisdiction to confirm or set aside sales so made.

F. M. WEBSTER, for appellants, cited *Civil Code, sec.* 239.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The attachment in this case was levied upon the interest of the appellees in various pieces of heavy castings, used in the manufacture of coal oil. The appellants procured, from the presiding judge of the Campbell county court, an order for the sale of the property levied upon, under which order the sheriff made the sale on the 2d August, 1859—being a few days prior to the August term of the Campbell circuit court. At the next succeeding term the sheriff made a report of this sale. The appellees excepted to the report, and resisted a

confirmation of the sale upon the following, among other grounds:

1. Because the sale was not advertised according to law. 2. The property was improperly and fraudulently procured to be sold. And, 3. That it was sold for greatly less than its value.

Upon the proof offered in support of these exceptions they were sustained by the court below; the sale was quashed and set aside, and the purchaser ordered to return the property to the sheriff. From that order the plaintiff in the action, and the purchaser of the property, have prosecuted this appeal.

They insist upon a reversal of the order mainly upon the ground that the sale by the sheriff, under the order of the presiding judge, was *final* and *complete*, without a report by the officer, or its confirmation by the circuit court, and that the law confers upon the circuit court no jurisdiction either to confirm, set aside, or otherwise disturb sales so made.

The provision of the Civil Code, under which the order of sale was made, is found in *sec.* 239, which provides, in substance, that the court shall make proper orders for the preservation and use of the property during the pendency of the action. It may direct a sale of the property, other than slaves, where, by reason of its perishable nature, or the cost of keeping it, a sale would be for the benefit of the parties. "In vacation such sale may be ordered by the judge of the court, or, of any such property other than a steamboat, by the presiding judge of the county court. The sale shall be public, after advertisement, and be made in such manner and upon such terms of credit, with security, as the court or judge, having regard to the probable duration of the action, may direct."

The proceeding authorized by this statute is a summary and extraordinary one. The property of a defendant, upon whom there has been no service of process either actual or constructive, is subjected to sale at public auction, upon the *ex parte* application of the plaintiff, either to the *court* in term time, or in vacation to the judge of the court, or to the presiding judge of the county court. Why should not such sales be subjected to the restrictions and safeguards intended for the protection of

litigants, and which apply to all other judicial sales? What is there in the policy of the law, or in the nature of the case, which requires that a sale of property under the order of a county judge should not be held subject to the future scrutiny and revision of the court, even if there were no statute expressly conferring such power? It seems to us that a party thus summarily deprived of his title to his property, presents the very strongest claims to the aid of the chancellor, in the exercise of his revisory power over such sales.

But the subsequent sections of the same article do expressly confer the power alluded to. *Section* 255 declares that "the court may, from time to time, make and enforce proper orders respecting the *property, sales, and, the confirmation thereof,* and the application and payment of the moneys collected." The language of this section is general, and there can be no doubt that it was intended to apply to all sales of attached property, whether the sale was ordered during the pendency of the action, or after final judgment. It would be preposterous to suppose that the legislature intended that a sale of attached property, made in pursuance of a final judgment, according to the provisions of the Code relating to the subject, should be subjected to the confirmation of the court, and that an interlocutary sale, ordered in vacation, by a county judge, on the *ex parte* suggestion of the plaintiff, should be deemed final and absolute, and placed wholly beyond the power of the court to determine its fairness or validity, and to confirm or reject it according to the facts attending it.

And it may be remarked, that upon some, if not upon all the grounds of exception which have been stated, the court would not hesitate even to set aside a sale under execution, if sustained by evidence such as this record discloses, in support of the exceptions. Without commenting upon this testimony it is deemed only necessary to say that it was sufficient to justify the court in avoiding the sale, and the judgment is affirmed.