## SOULE *v.* BARLOW*

### *Adverse Possession. Evidence.*

Defendant claimed the *locus in quo* as devisee under the will of A, and proved that it was decreed to him upon the settlement of A's estate, and he ever after claimed to own it, and from time to time exercised acts of ownership upon it. It appeared that A in his lifetime conveyed the *locus* to B; and the defendant offered to show that soon thereafter, A and B, by parol agreement, exchanged lands, A taking the *locus,* and giving B other lands, and that this exchange was ever after regarded by them as valid, and that each claimed the land for which he exchanged, and that upon the settlement of their estates, the lands were treated the same way. *Held,* that the testimony was admissible as tending to give to the acts of the defendant done under A's title or color of title, the character of acts of possession,

*Decided at the General Term in October, 1873.

thus tending to strengthen defendant's evidence that they were done under a claim of right.

The *locus in quo* and another lot adjoining it on the north, each contained four acres, and were each about fifty rods long and thirteen rods wide, and were bounded on the west by a creek impassable by cattle, upon the bank. of which no fence was needed. Plaintiff's farm of a hundred acres bounded these lots on the east, and they were only inclosed by the fences surrounding the farm on the north, south, · and east, and by the creek on the west. *Held,* that in order for such fencing, under the circumstances, to avail the plaintiff even as evidence in making title to or possession of the *locus,* it must have been kept up for the purpose of inclosing it as his own, and not merely as a more convenient mode of inclosing his farm.

Defendant's evidence tended to show acts of possession by himself on the *locus,* under claim and color of title, as early as 1850. *Held,* that as it could not be assumed from the evidence that plaintiff had prior possession, a charge as to the effect of defendant's acts of possession that assumed that plaintiff *had* prior possession, and that defendant's acts were intrusions upon his possession, was erroneous.

TRESPASS *qua. clau.* Plea, general issue, and trial by jury, September Term, 1872, Franklin County, ROYCE, J., presiding, and verdict and judgment for plaintiff.

It appeared that in December, 1821, plaintiff purchased and took a deed of Lois Bradley, executrix of Anson Bradley's will, of a farm containing about one hundred acres, lying directly east of lots 39 and 40, and lot 39 is the one on which the trespass complained of was committed. Lot 40 is bounded on the south by lot 39, and 39 is bounded on the south by 38. These three lots are bounded on the west by a creek that is generally impassable by cattle, and on the bank of which there was no need of a fence. Lots 39 and 40 are bounded on the east by said farm, and 38 by a piece of land lying directly south of said farm which plaintiff purchased of one Lobdell in 1837. Lots 38, 39, and 40, were always known as swamp lots, and contained about four acres each, and were of but little value except for the timber on them. The plaintiff went into possession of said farm in the spring of 1822, and has continued to own and occupy it ever since. Plaintiff claimed that lot 39 was embraced in his deed from Bradley; but the court held that it was not, and that he could not make color of title to it under said deed. Plaintiff's evidence tended to show that at the time he went into possession of said farm, lot 39 was inclosed by the fences that surrounded said farm on the north, south, and east sides, and by said creek on the west side,

and that said lot had been so inclosed ever since, and in no other manner; that in 1823 he went on to lot 39 and cut timber, and had cut more or less timber on it every year since. Some of the timber he had sold, and the rest he had used for building purposes, fire-wood, and fencing; that he had always claimed to own it, and had occupied it in the same manner ever since. Plaintiff testified that he did not know who owned lot 40, that he had no deed of it, and never bought it, but had been in possession of it since about 1850, had cleared it, and claimed to own it. It appeared that this lot had always been inclosed the same as 39. The plaintiff put in evidence the record of a deed dated September 13, 1820, from Col. Bradley Barlow, purporting to be to Andrew Bradley, of lot 39, and introduced evidence tending to show that said record had been altered from Anson to Andrew. But inasmuch as plaintiff did not claim title to said lot under Andrew Bradley, and got no color of title under his deed from Lois Bradley, the court ruled that it was immaterial whether said record had been altered or not. The defendant introduced in evidence a certified copy of the same deed.

Defendant offered to show by parol, that soon after Col. Barlow deeded lot 39 to Andrew Bradley, that he and Bradley made a verbal exchange of lands, by which Barlow took of Bradley, among other lands, lot 39, and Bradley took of Barlow three swamp lots further south, and that this exchange had been acquiesced in since. This evidence was objected to, and excluded; to which the defendant excepted. But the court permitted the defendant to show any acts of occupancy of this lot by Barlow, or any one claiming under him, at any time.

The defendant offered to show that in the settlement of Andrew Bradley's estate, who died in 1832, lot 39 was not appraised as a part of his estate, and that the three swamp lots further south were. This evidence was objected to, and excluded, to which the defendant excepted. It appeared that Col. Barlow died October 16, 1836, and the defendant read in evidence the probate of his will, by which it appeared that the defendant was a legatee under the will. He also put in evidence the record of the inventory and appraisal of Col. Barlow's estate, from which it appeared that lot

39 was appraised as a part of his estate ; also, decree of distribution and copy of record from the town clerk's office in Fairfield, from which it appeared that lot 39 was, on the 30th of March, 1840, assigned to the defendant. He also introduced evidence tending to show that the executor of Col. Barlow's estate claimed this lot as belonging to the estate. The defendant testified that he was forty-five years old ; that he had always claimed this lot since it was assigned to him ; that he first went on to it in 1848, and in that year, as he was negotiating a sale of it, he first learned that the plaintiff claimed it ; that he then inquired of the plaintiff about it, and the plaintiff told him that he supposed he owned it, as he had a deed of it, and, if he did not own it, he wanted to ; that in 1850 he first cut some timber on the lot for rafters for a barn, and had cut small quantities of timber, as he thought, almost every year since. But there was no proof that the plaintiff ever knew of such cutting ; but the evidence did show that the plaintiff knew the defendant had claimed this lot since 1848. The court held that from the evidence, both parties were strangers to the real title, but that the defendant got color of title to the lot by virtue of the assignment of it to him, and charged the jury in a manner not excepted to, as to the kind of occupancy and possession of it he was required to make out, to get a title.

The defendant requested the court to charge the jury, that inasmuch as the plaintiff had no color of title, in order for him to make a title by possession, it was necessary for him to prove that he maintained a fence upon the north, south, and east sides of this lot for the period of fifteen years. But the court charged that the plaintiff's right was to be determined by his occupancy ; that his possession would be limited to the land inclosed and occupied, and he was bound to make a title by actual possession ; that it must be fenced, but that it need not be inclosed specifically ; that if they should find that it was fenced as the plaintiff's evidence tended to show it was, that would be sufficient ; to which the defendant excepted.

The defendant requested the court to charge, that the occupancy and possession of the lot which the plaintiff's evidence tended to show, was not sufficient to give him a title by possession. But

the court charged that the law did not require that he should have any occupancy or possession that was inconsistent with the nature of the property; that it was in proof that this lot was soft, swampy land, and only valuable for the timber that was upon it; that if the plaintiff used it for that purpose, and when he needed timber, went onto this lot and got it in an open and notorious manner, claiming it as his own, and that this kind of possession was peaceable and adverse, and continued uninterrupted for fifteen years, it would give him good title; that the plaintiff claims to have occupied this lot since 1822, and he is entitled to the benefit of any fifteen years in that period which is continuous—it was not necessary that he should have acquired it the first fifteen years —he might let it lie vacant, and then commence to assert a claim to the land, and his fifteen years would commence from the time he commenced to claim and occupy the land. To this the defendant excepted.

The defendant also requested the court to charge, that it appearing that the defendant was a minor at the time this lot was assigned to him, the plaintiff could not commence to get a title to it by possession during his minority. But the court declined so to charge, for the reason that there was no evidence in the case tending to show that the plaintiff did commence to get title to said lot by possession at any time during the minority of the defendant. To this the defendant excepted.

The defendant introduced as a witness Mrs. Lucy Barlow, widow of Hubbard Barlow, and mother of the defendant, who testified that about fifty years ago, Col. Barlow told her husband to go onto any of the swamp lots south of the bridge, and get rails and timber where he could find it most convenient, to fence his farm with, and that her husband accordingly set men to work to cut and get out rails and timber to fence said farm; and it was a number of years before they procured enough. The court charged with reference to this testimony, that if Col. Barlow had no title to the land at this time—and that there was no proof that he had —such a license would not amount to very much towards interrupting anybody's possession; that the license was general as to any of the swamp lots south of the bridge; and in order for it to have

interrupted the possession of the plaintiff, it should have appeared that Hubbard Barlow went onto this lot; and if he did, and the plaintiff was informed of the fact, and stood by and saw him cutting the cedar timber on it without protesting against it, this would be a very suspicious circumstance against him; that to interrupt the possession of the plaintiff, it was incumbent upon the defendant to show that Hubbard Barlow, under the license from Col. Barlow, went onto this lot; but they were to weigh this testimony upon the question as to the claim made by Col. Barlow and the plaintiff to this lot at that time.

Defendant introduced Darius S. Barlow, son of Col. Barlow, as a witness, who testified that while plaintiff occupied said farm, he asked leave of witness' father to cut some timber and tap some trees on the *swamp lot,* but witness could not tell the time; nor the particular lot, and that his father gave the leave asked.

The defendant requested the court to charge that defendant having color of title since 1840, if it should be found that the acts of the defendant upon the land did not necessarily in and of themselves indicate a claim of title, still, entering upon the land from year to year, and cutting timber and removing it therefrom by the defendant, in connection with his color of title, and his claim of ownership thereunder, if continued since 1840, would give the defendant good title against the world. But the court charged as follows:

"If you find, under the instructions of the court, that Soule has got a perfect title, then has it been divested? It is not claimed that it has, unless by this claim of adverse possession of Ruel Barlow. When a man is occupying and claiming to own a piece of land, as the evidence shows Soule was in this case, a party going on and taking off a stick of timber once in a while, under such circumstances as would make him a trespasser between him and the real owner, it is not every such act which interrupts possession—any cutting upon the land of another is technically a trespass—he must have done something more than this, he must have conducted himself in such a way, as the court has explained to you would give a man title by possession—he must have entered upon the land, claiming it as his own, not by occasional going onto the land, but it must have been notorious, continued, and

adverse to any one else." To this portion of the charge the defendant excepted.

*Farrington & McIntyre* and *Noble & Smith*, for the defendant.

Parol evidence should have been admitted to show a verbal exchange of lands between Col. Barlow and Andrew Bradley, in connection with the record of the settlement of Andrew Bradley's estate, showing that the lands received from Col. Barlow in exchange, were a part of Bradley's estate in 1832, as tending to show Col. Barlow's claim to this lot, and upon what authority he gave Hubbard Barlow and plaintiff license to go upon it. 2 Greenl. Ev. (10th ed.) s. 618; *Adams* v. *Fullam*, 43 Vt. 590; *Hollister* v. *Young*, 42 Vt. 407. The testimony of Mrs. Hubbard Barlow tends to show acts of possession on the part of Col. Barlow by giving Hubbard Barlow, his son, license to go upon these swamp lots south of the bridge to get rails, which he did for several years. The testimony of Darius S. Barlow tends to show that Soule obtained permission of Col. Barlow to go onto the swamp lot to cut timber. It is not to be presumed that Col. Barlow gave a license to these parties to go onto lands not belonging to him; and the exceptions do not show that Col. Barlow claimed any other lot than 39. Andrew Bradley had color of title, if not the legal title; and Col. Barlow going into possession under this exchange, he entered under color of title, and all the acts of Col. Barlow and those acting under him, are to be regarded as acts of possession under color. Col. Barlow was in the situation of one claiming under a defective deed, or by parol gift, which would have given him the right to this lot against all parties. Both parties claimed title from Col. Barlow. Angell Lim. (3d ed.) s. 405; 3 Washb. Real Prop. 130, 143; *Pope* v. *Henry*, 24 Vt. 560; *Ripley* v. *Yale*, 19 Vt. 156; *Sumner* v. *Stevens*, 6 Met. 337; *Comins* v. *Comins*, 21 Conn. 416; *Briggs* v. *Prosser*, 14 Wend. 227.

The possession and inclosure by the plaintiff should have been such that all parties claiming a right would be presumed to know that he claimed exclusive possession, or the plaintiff should have shown actual notice to the legal owner, or to the one having the right to possession. This lot being swamp land, and only valu-

able for the timber, and surrounded by land of like character, it was not sufficient that the plaintiff's acts of possession were simply consistent with the nature of the property, and when he wanted timber, went onto this lot and got it in an open and notorious manner, claiming it as his own : such possession continuing peaceable, adverse, and uninterrupted for fifteen years, would not give him title. *Doolittle* v. *Linsley*, 2 Aik. 155 ; *Parker* v. *Parker*, 1 Allen, 245 ; *Slater* v. *Jefferson*, 6 Cush. 129 ; *Davis* v. *White*, 27 Vt. 751 ; *Morris* v. *Collamer*, 105 Mass. 129.

The fact that fences were upon the east, north, and south lines of plaintiff's farm, as the testimony tended to show, does not show such an inclosure as would give notice that the plaintiff claimed exclusive possession to lot 39 ; and as matter of law, such inclosure is not sufficient. *Hodges* v. *Eddy*, 38 Vt. 327 ; *Wood* v. *Willard*, 37 Vt. 377 ; *Morse* v. *Churchill*, 41 Vt. 653 ; 3 Washb. Real Prop. (3d ed.) s. 36.

There being evidence to show the claims of Col. Barlow and the plaintiff to this lot, the testimony of Mrs. Barlow was evidence to show that the license from Col. Barlow to Hubbard Barlow was to go upon his lot ; therefore the charge upon this point was wrong.

The court should have made a distinction between such acts as would constitute an interruption of possession by a stranger's claiming to own and occupy land without color of title, and the acts of a person claiming under color of title. Acts that would be trespass in the former would be acts of possession in the latter.

The court treated both parties as strangers to the real title to this lot, and therein was error. 3 Washb. Real Prop. 136 ; *Kidder* v. *Kennedy*, 43 Vt. 717 ; *Hodges* v. *Eddy*, 38 Vt. 327, 348 ; *Jakeway* v. *Barrett*, 38 Vt. 316 ; *Ruck* v. *Squiers*, 498.

If the jury found that the claim and possession of Soule commenced after the death of Col. Barlow in 1836, then the defendant had color of title from the death of Col. Barlow, and the plaintiff's adverse possession could not commence until 1848, when the defendant became of age. The defendant coming of age in 1848, and going into possession of the lot at that time under his color of title, his acts of occupancy as shown for 19 years, would have interrupted Soule's possession, and given the defendant a complete

title, or at least would have prevented Soule from getting title during this time.

*H. S. Royce* and *J. J. Deavitt*, for the plaintiff.

From 1822 to 1850, when it is claimed that the defendant cut some rafters upon the *locus in quo*, a period of twenty-eight years, the land was enclosed by plaintiff with his other land, the plaintiff claimed it as his own, cut wood and timber upon it every year, and occupied it exclusively. Therefore the plaintiff had acquired an indefeasible title in 1850. *Jackson* v. *Halstead*, 5 Cow. 220 ; *Jackson* v. *Woodward*, 1 Cow. 276. The doctrine of constructive possession does not extend to land in the actual adverse possession of another. *Exr. of Stevens* v. *Hollister*, 18 Vt. 274.

The case finds that the defendant was a stranger to the title ; and possession alone is sufficient to enable the plaintiff to sustain trespass against a stranger. *Sawyer* v. *Newland*, 9 Vt. 383 ; *Chandler* v. *Walker*, 1 Foster, 288 ; *Massen* v. ——, 14 Wend. 239 ; *Kidder* v. *Kennedy*, 43 Vt. 717 ; *Patchin* v. *Strand*, 28 Vt. 394 ; *Hughes* v. *Graves*, 39 Vt. 359 ; *Barstow* v. *Sprague*, 40 N. H. 27 ; Eastman's Dig. 634, s. 6 ; *Doolittle* v. *Linsley*, 2 Aik. 155.

It is not claimed that the defendant ever had actual possession of any portion of the lot, and without that, he could not gain constructive possession. *Brown* v. *Edson*, 22 Vt. 357 ; *Chandler* v. *Spear*, 22 Vt. 388.

The parol testimony offered for the purpose of showing title in Col. Barlow, was properly excluded. Gen. Sts. 352, s. 1, and cases cited.

The opinion of the court was delivered by

PECK, J. The evidence offered on the part of the defence, to show that soon after Col. Bradley Barlow deeded lot 39, being the lot in question, to Andrew Bradley, Andrew Bradley and Col. Barlow made a verbal exchange of lands, by which Col. Barlow took of Bradley, among other lands, lot No. 39, and Bradley took of Barlow three swamp lots further south, and that this exchange

had been ever acquiesced in since, ought to have been admitted. The defendant being a legatee under the will of Col. Barlow, who died Oct. 16, 1836, claims under Col. Barlow the lot in question, it having been in the settlement of that estate in the Probate Court, appraised as the property of that estate, and in the distribution set to the defendant by decree of the Probate Court, March 30, 1840. There was also evidence that the executor of Col. Barlow claimed the lot as the property of Col. Barlow's estate. In connection with this evidence, and the evidence as to the defendant's cutting timber on the lot in 1850, and almost every year since, claiming title to it ever after it was set to him by the decree of the Probate Court in 1840, it was competent for the defendant to prove that Col. Barlow, under whom he claims, claimed to own the lot in his lifetime, and the ground of his claim ; that is, the exchange by Col. Barlow of other swamp lots further south for this lot 39 ; more especially as a deed from Col. Barlow to Andrew Bradley, of this lot, dated Sept. 13, 1820, had been given in evidence by the plaintiff. The fact that Col. Barlow claimed to own the lot in question, and the ground of his claim, was as competent evidence as the fact that his executor claimed it as a part of the estate, and both were admissible as tending to give to the acts of the defendant done under the Col. Barlow title, or color of title, the character of acts of possession, tending to strengthen the evidence that they were done under a claim of right.

In connection with this evidence, the evidence offered by the defendant and excluded by the court, that in the settlement of Andrew Bradley's estate, lot 39 was not appraised as part of his estate, and that the three swamp lots further south were appraised, is admissible as tending to show the agreement of exchange of lots was acquiesced in.

The court think that in that portion of the charge in which the jury were told, referring to the lot in question, that " if they should find that it was fenced as the plaintiff's evidence tended to show it was, that would be sufficient," there was error. The jury might have understood from this, in connection with what immediately precedes it, that the court meant that such fencing

was sufficient to constitute actual possession; but if they did not understand it in this sense, they would be very likely, at least, to understand by it that such fencing would have the same effect as the ordinary enclosing of land by fences for the purpose of occupancy, with the same presumption of possession and claim of ownership arising therefrom, and have the same effect in giving to occasional acts of cutting timber thereon the character of acts of possession. In either view, this part of the charge, unexplained and unqualified, would mislead the jury. In order for such fencing, under the circumstances, to avail the plaintiff even as evidence in making title or possession to this lot, it must have been kept up for the purpose of enclosing the lot in question as his own, and not merely as a more convenient mode of enclosing his farm which was conveyed to him by Lois Bradley. There is much in the case tending to show, and to indicate to a common observer, that the latter was the purpose. Lot 39 in dispute, and lot 40 lying north of and adjoining it, as appears by the exceptions and plan of the premises and adjoining lands referred to, are bounded on the east by the plaintiff's farm deeded to him by Lois Bradley, extending the whole width of said farm one hundred rods; lots 39 and 40 being each about fifty rods long north and south, and each containing four acres, and always been known as swamp lots, and of little value except for the timber on them, and are bounded on the west by a creek which is generally impassable by cattle, there being no necessity for a fence on the bank of the creek. As these lots contain but four acres each, they must be but about thirteen rods in width from the creek to the plaintiff's farm conveyed to him by Lois Bradley. It appears that the only fencing of lot 39 on which the plaintiff relied, was that at the time he went into possession of the Bradley farm above mentioned, in 1822, swamp lots 39 and 40 were enclosed by the fences which surrounded said farm on the north, south and east sides of said farm, and by the creek aforesaid on the west side, and been so enclosed ever since. Thus it appears that the extension of the fence on the north side, and the fence on the south side of this Bradley farm, some thirteen rods beyond the western boundary of the farm through the width of the swamp

lots to the creek, saved to the occupant of the Bradley farm the fencing of the west end of the farm, one hundred rods. This tends to show the fences were thus kept up merely for the purpose of fencing more conveniently and cheaply the Bradley farm. Again, it appears that swamp lot 40 was included within the same fences that included lot 89, and yet it appears by the plaintiff's own testimony that he only claims to have been in possession of that lot since about 1850, but now claims it by possession.

It cannot be assumed from the evidence, that the plaintiff commenced a possession of the lot prior to the time that the evidence tends to show that the defendant, by acts of possession under his color of title under the proceedings of the Probate Court, acquired possession, which being under color of title would extend by construction to the whole lot; and the jury, under the charge, may not have found that the plaintiff's possession commenced earlier than fifteen years before the trespass complained of. This appears from the fact that the court told the jury that "the plaintiff claims to have occupied this lot since 1822, and he is entitled to the benefit of any fifteen years in that period which is continuous;" and that "it was not necessary that he should have acquired it the first fifteen years; that he might let it lie vacant, and then commence to assert a claim to the land, and his fifteen years would commence from the time he commenced to claim and occupy the land." The defendant's evidence of acts of possession under his color and claim of title, goes back to 1850. Yet it is apparent from the whole tenor of the charge set forth in the exceptions as to the effect of the defendant's acts of possession, that the court assumed that the plaintiff, during that time, was in adverse possession, and that the defendant's acts upon the lot were an intrusion upon the possession of the plaintiff. In one part of the charge, in answer to a particular request of the defendant to charge as to the effect, in gaining title, of the defendant's continuous acts of cutting timber on the lot under his color of title and claim of ownership, as the defendant's evidence tended to show, although the court seem to have left it to the jury to find whether the plaintiff had ever acquired a perfect title, still the court assumes that at the time of the

GENERAL TERM,

defendant's entry and cutting timber from time to time, the plaintiff was occupying and claiming to own the land. The language of the court is: " When a man is occupying and claiming to own a piece of land, *as the evidence shows Soule was in this case*, a party going on and taking off a stick of timber once in a while," etc.; thus in the charge putting the defendant in the condition of an intruder upon an assumed existing prior possession in the plaintiff, without even accompanying this view of the case with instructions as to the force and effect of the defendant's evidence of acts of possession under his color and claim of title, on the hypothesis of there having been no such prior existing possession in the plaintiff. In this general view of the charge, the court think there was error. It is true it is stated in the case that the court charged the jury in a manner not excepted to, as to the kind of occupancy and possession the defendant was required to make out, to get a title ; but this does not answer the objection, as it is not necessary that the defendant's possession should have ripened into a perfect title in order to defeat the plaintiff's action.

There are numerous other exceptions to particular isolated passages in the charge, which the court, in view of the fragmentary manner in which those portions of the charge are stated, has not passed upon ; and ·from this omission to notice them, no inference can be drawn in favor or against either party as to their validity.

Judgment reversed, and new trial granted.