# CASES

IN THE

# SUPREME JUDICIAL COURT,

OF THE

# STATE OF MAINE.

TOBIAS L. ROBERTS, and another, *vs.* FRED E. RICHARDS, and another.

Hancock.    Opinion June 2, 1891.

*Deed. Island. Grant,— location. Disseizin. Adverse Use. Act of Separation, June 19, 1819; R. S., 1857, p. 43; French Grant, July 23, 1688; Resolves of General Court, July 6, November 23, 1787, January 26, 1814.*

Where land bounded southerly on the seashore and extending one league in width on each side of a river at its mouth, was granted together with the island of Mount Desert and "other islands on the fore part of said two front leagues;"—*Held;* that in ascertaining the location of the "other islands" mentioned, the rule governing "flats" between adjoining owners of land situated on the rear shore does not apply.

The defendants claim title to one of the six Porcupine islands in Frenchman's Bay, known as Round Porcupine, through the State of Maine from the Commonwealth of Massachusetts in 1819 and 1876. The plaintiffs contend that the Commonwealth, by Resolve in 1787 granted it with other islands to one Gregoire. It appeared that a few months thereafter a special agent of the Commonwealth and Gregoire with a surveyor proceeded to the locality and established the lines of the grant. Five years afterwards Gregoire conveyed all the land and islands granted, mentioning thirteen islands by name, but not including any of the Porcupines or others in their vicinity, and never afterwards, so far as the county registry shows, attempted to convey any of the Porcupine islands. On the other hand, the Commonwealth did subsequently authorize the location of five hundred acres on the Porcupine islands. *Held;* that in the absence of any more direct evidence of the location of the grant, these contemporaneous and subsequent acts of the parties are sufficient evidence that Round Porcupine was not included therein.

To effect the disseizin of the real owner of land, the entry under a duly regis-
tered deed from one having no title, must be followed by an open, notorious,
exclusive possession, continued uninterruptedly during the statute period.

Such a deed is evidence of the extent of the grantee's claim, but the registration
is constructive notice to those only who would claim under the same grantor.

The essential use and occupation by one claiming adversely must be of such
unequivocal character as will reasonably indicate to the true owner visiting
the premises during the statute period, that, instead of suggesting the
probable invasion of a mere occasional trespasser, they unmistakably show
an asserted exclusive appropriation and ownership.

The facts in this case are not such as can lay the foundation of a presumed
grant from Massachusetts or Maine.

ON REPORT.

This was a real action for the recovery of an island in French-
man's Bay, near Bar Harbor, Mt. Desert, known as Round or
Bald Porcupine and Wheeler's Porcupine. Both parties agreed
that the title at some time prior to the separation of Maine from
Massachusetts, was in the latter State.

The case is stated in the opinion.

*Deasy and Higgins*, for plaintiffs.

Plaintiffs' deeds give them better title than defendants' pos-
session admitted by the declaration ; also better than defendants'
earlier deeds from Massachusetts as a grantor, because she had
before then parted with her title to the De Gregoires, under
whom neither party claim by deed. They also have title as
against all the world by adverse occupation for more than twenty
years under color of recorded deeds. If locus not within the
French Grant, plaintiffs entitled to have question of presumption
of grant from Maine or Massachusetts, to person unknown,
submitted to the jury. Grant admissible to show that de-
fendants' grantor had no title. *Hickey* v. *Stewart*, 3 How. 750 ;
*Rand* v. *Skillin*, 63 Maine, 104. Measuring the two front
leagues of the French grant in accordance with the doctrine of
*Winthrop* v. *Curtis*, 3 Maine, p. 117, and extending the side
lines at right angles with the general course of the two front
leagues on the shore, it includes Wheeler's Porcupine. Such
side lines following the sinuosities of the river would be crooked,
and if any line is to be produced to find the islands on the
"fore-part" the last line is the line. Line so produced includes

Plan accompanying *Roberts* v. *Richards*.

Wheeler's Porcupine. A grant of "The Island of Mt. Desert and other islands," etc., includes the group of islands of which Mt. Desert is one. Leonard Jarvis, chairman of the committee appointed by the Mass. Genl. Court, reported that the grant "includes six small islands called the Porcupines," of which Wheeler's is one. These declarations with the Grant itself and other facts should be submitted to the jury. *Treat* v. *Strickland*, 23 Maine, 234; *Deming* v. *Carrington*, 12 Conn. 1; *Riddle* v. *Dixon*, 2 Pa. St. 372; *Padgett* v. *Lawrence*, 10 Pai. Ch. 170; S. C. 40 Am. Dec. 240, note. When Massachusetts conveyed to Maine in 1853, Tobias Roberts was in possession. State was disseized and could not convey. *Brinley* v. *Whiting*, 5 Pick. 348; *McMahan* v. *Bowe*, 114 Mass. 145; *King* v. *Barns*, 13 Pick. 24; *Hall* v. *Stevens*, 9 Met. 418; *Univ. of Vt.* v. *Joslyn*, 21 Vt. 52.

Adverse possession : Title acquired against Massachusetts ; R. S., of Mass. 1836, c. 119, § 12. So in Maine prior to Repealing Act of 1885 ; Stat. 1885, c. 368. *Nichols* v. *Boston*, 98 Mass. 42 ; *Hinckley* v. *Haines*, 69 Maine, 76 ; *People* v. *Arnold*, 4 N. Y. 508 ; *U. S.* v. *Fitzgerald*, 15 Pet. 407 ; *People* v. *Clarke*, 9 N. Y. 349 ; *People* v. *Van Rensselaer*, *Id.* 291 ; *People* v. *Mayor of N. Y.* 28 Barb. 253. Repealing Act of 1885 not retrospective. *Atkinson* v. *Dunlap*, 50 Maine, 111 ; *Goshen* v. *Stonnington*, 4 Conn. 209 ; *Society* v. *Wheeler*, 2 Gal. 108 ; *Dash* v. *Van Kleeck*, 7 Johns. 477 ; *Proprs. &c.* v. *Laboree*, 2 Maine, 275 ; *Davis* v. *Minor*, 1 How. (Miss.) 183 ; *Kinsman* v. *Cambridge*, 121 Mass. 558 ; *Wright* v. *Oakley*, 5 Met. 400 ; *Woart* v. *Winnick*, 3 N. H. 473 ; *Griffin* v. *McKenzie*, 5 Geo. 163 (50 Am. Dec. note p. 393). Counsel also cited upon adverse possession : *Campbell* v. *Holt*, 115 U. S. 620 ; *Steel* v. *Johnson*, 4 Allen, 425 ; *Sherman* v. *Kane*, 86 N. Y. 57 ; *Sims* v. *Frankfort*, 79 Ind. 446 ; *Bicknell* v. *Comstock*, 113 U. S. 149 ; Bus. Lim. § 251 ; *Eastern R. R.* v. *Allen*, 135 Mass. 13 ; *Ellicott* v. *Pearl*, 10 Pet. 442 ; *Moss* v. *Scott*, 2 Dana (Ky.), 275 ; *Ewing* v. *Burnet*, 11 Pet. 41 ; *Barclay* v. *Howell*, 6 Pet. 513 ; *Longworthy* v. *Myers*, 4 Iowa, 18 ; *Conway* v. *Kinsworthy*, 21 Ark. 9 ; *Bell* v. *Longworth*, 6 Ind. 634 ; *O'Hord* v.

*Richardson,* 46 Pa. St. 390; *Draper* v. *Short,* 25 Mo. 197; *Booth* v. *Small,* 25 Iowa, 177; 3 Wash. R. P. p. 150 (3d Ed.); *Johnson* v. *Gorham,* 38 Conn. 521; *La Frombois* v. *Jackson,* 8 Cow. 589; *Ford* v. *Wilson,* 35 Miss. 504; *Grant* v. *Fowler,* 39 N. H. 104; *Farrar* v. *Fessenden, Id.* 268; *Lea* v. *Polk Co. Copper Co.* 21 How. 493; *Hall* v. *Law,* 102 U. S. 461; *Bellows* v. *Jewell,* 60 N. H. 420; *Gardiner* v. *Gooch,* 48 Maine, 487; *Ament* v. *Wolf,* 1 Grant Cas. 518 (Penn.); *Eifert* v. *Reid,* 1 N. & Mc. 364; *Boynton* v. *Hodgdon,* 59 N. H. 247; *Spaulding* v. *Warren,* 25 Vt. 322; *Jackson* v. *Oltz,* 8 Wend. 440; *Webb* v. *Richardson,* 42 Vt. pp. 465–474; *Foxcroft* v. *Barnes,* 29 Maine, 131; *Blake* v. *Freeman,* 13 *Id.* 135; *Webb* v. *Hynes,* 9 B. Mon. 388; *Babson* v. *Tainter,* 79 Maine, 371. Presumption of grant: *Hillary* v. *Waller,* 12 Ves. 239, 252; *Eldridge* v. *Knott,* Cowp. 215; *Edson* v. *Munsell,* 10 Allen, 568; *Mayor of Hull* v. *Horner,* Cowp. 102; *Stevens* v. *Taft,* 11 Gray, 33; *Doe* v. *Reed,* 5 B. & A. 332; *Barnard* v. *Edwards,* 4 N. H. 321; *Garrett* v. *Jackson,* 20 Pa. St. 335; *Casey's Lessees* v. *Incloes,* 1 Gill, 503; *Williams* v. *Dowell,* 2 Head, 695–698; *Ricard* v. *Williams,* 7 Wheat. 59-110; *Goodtitle* v. *Baldwin,* 11 East, 488; *Crooker* v. *Pendleton,* 23 Maine, 341; *McIntire* v. *Thompson,* 4 Hughes, 562 (10 Fed. Rep. 531).

*Nathan and Henry B. Cleaves, Wiswell, King and Peters* with them, for defendants.

VIRGIN, J. Writ of entry to recover possession of Round Porcupine Island situated in Frenchman's Bay.

The plea admits the defendants to be in possession of the whole Island, claiming a freehold therein. Upon this *prima facie* evidence of title the defendants may confidently rely until the plaintiffs shall affirmatively show that possession to be wrongful as against themselves. The case is before the court on a report of the evidence; and the question is — Which of the parties does this evidence show to have the better title to all or any part of the demanded premises. R. S., c. 104, § 10; *Wyman* v. *Brown,* 50 Maine, 139; *Stewart* v. *Davis,* 63 Maine, 539, 542.

The plaintiffs' record title comes through five mesne conveyances from Richard Higgins, whose deed of December 15, 1849, to his grantee after describing the Island in controversy, specifies the source of his title as follows: "Being the same which was forfeited to me, the said Richard Higgins, by paying the taxes and cost of advertising agreeably to the statute" mentioned and then in force. The taxes paid by him were assessed in 1845 and 1846 on the Island by the assessors of the town of Eden. The Island, however, was never in that town but in Gouldsboro', as is shown by the acts of incorporation of the towns named. Higgins, therefore, obtained no legal title by the payment of taxes assessed without authority of law and his deed of warranty could convey none.

The defendants derived their record title through the State of Maine from the Commonwealth of Massachusetts which the parties admit held the title at some time prior to the Separation. By force of the Act of Separation, of June 19, 1819, incorporated into the constitution of this State, one half of the lands belonging to Massachusetts situated in Maine, became the property of Maine. Appendix R. S., 1003 : Const. Maine, Art. 10 (see R. S., 1857, 43) ; and the other half by deed of October 5, 1853. And on December 28, 1876, the State of Maine, by its Land Agent thereunto duly authorized, conveyed "All the right, title and interest of the State" in Round Porcupine Island to the defendants and one Buffum whose interest was conveyed to the defendants on October 25, 1882.

The plaintiffs challenge the source of the defendants' record title, contending that Massachusetts had parted with her title prior to the Separation in 1819.

The report shows that, on July 23, 1688, certain officers of Louis XIV granted to one Cadillac "The place called Donaquec, consisting of two leagues on the seashore and two leagues in depth, viz., one league on each side of Donaquec [now Jordan's] River;" together with "The Island of Mt. Desert and other Islands which are on the fore part of said two front leagues;" which grant, on May 4, 1689, was confirmed by the King, specifying the land on the main land, but omitting all mention of any islands whatever.

Prior to November 6, 1786, the French grant became the property of Massachusetts. On that day, Marie Therese de Gregoire (granddaughter of Cadillac) and her husband petitioned the General Court of Massachusetts, for reasons stated in the petition, to confirm to them the territory covered by the grant. On July 6, 1787, the General Court, by resolve granted to the De Gregoires "All such parts of the Island of Mt. Desert and the other islands and tracts of land particularly described in the grant of Louis XIV to Cadillac which now remain the property of the Commonwealth," the committee to equitably quiet all claims of title in such parcels, conformable to precedents,— the Gregoires not to take possession until their naturalization, which took place November 2, 1787.

Among the first questions which confront the parties, is — Where upon the face of the earth is located so much of the grant as is material to this case, or in other words, did the grant include Round Porcupine.

It is not a question of construction relating to "flats" between adjoining owners of land situated on tide waters ; but of islands described as located "on the fore part of two front leagues" definitely fixed and well known, extending along the shore and divided in the middle by the banks of a river. Had the grant been made within the lifetime and memory of recent generations, its boundaries could be readily ascertained. But it is idle to undertake to ascertain what islands lay "on the fore part of said two front leagues" two centuries ago, by making it depend upon the precise curvature of the banks of the river where it now empties into the sea. The Gregoires and the Commonwealth, with whatever facilities they had and painstaking they exercised, practically established the exterior lines of the grant in a manner satisfactory to themselves, as is amply shown by their contemporaneous, followed by their respective subsequent acts, which are much more convincing than anything of a mere speculative character. *Knowles* v. *Toothaker*, 58 Maine, 172.

On November 23, 1787, a few days after the Gregoires' naturalization, the General Court, on their petition, by a resolve appointed one Samuel Thompson "to join with them in opening

and establishing the lines between the lands granted to them by this Court and the lands belonging to the Commonwealth." The parties proceeded to the locality with a surveyor, and run out the lines on the main land finding the east line to be a due north and south course. Thompson made his report on August 13, 1789. And after describing the exterior lines on the main on both sides of Jordan's River, the report adds : "Respecting the islands lying in front I do not remember the names of all of them, but Hog Island whereon one Bartlett lives" (now known as Bartlett's Island) "I well know and remember that it lies on the front of the aforesaid patent, with Hopkins and Cranberry Islands and a number of others."

Hog, or what is now known as Bartlett's Island, lies West of Mt. Desert Island ; and if Thompson's vivid recollection that that island lies in the front of the aforesaid patent be correct, then Round Porcupine will fall three or more miles east of the east line of the grant.

That Round Porcupine was not in the grant to the Gregoires is made morally certain by the fact that, on August 2, 1792, they conveyed to one Jackson all the territory including the islands as well as the main land (with certain immaterial specified exceptions) which Massachusetts conveyed to them, specifying thirteen islands each of which is named with the number of acres of each, including Bartlett's and the Cranberry Islands, all of which lie south and west of Mt. Desert Island, and the one farthest east being more than a mile west of Round Porcupine which was not named. This deed was executed within three years of the time when they went with Thompson and his surveyor and ascertained the extent and location of their property. And the fact that their deed to Jackson, purporting to convey all the land (with the exceptions named) which Massachusetts conveyed to them, did not mention any of the Porcupines or other islands east of Mt. Desert, coupled with the additional fact testified to by the Register of Deeds that the Registry of Hancock county contains no record of any deed from the Gregoires of Round or any other Porcupine Island, shows most conclusively that they did not own the island in controversy.

That the authorities of Massachusetts entertained the same view, is as conclusively shown by a resolve of the General Court of that Commonwealth, passed in January, 1814, authorizing one Meagher to locate five hundred acres of land under the direction of the agent for the sale of eastern lands, on the lands of the Commonwealth, "or on Iron Bound Island or Porcupine Islands in Frenchman's Bay."

And finally, in June, 1820, Massachusetts conveyed to one Parrott four of the six Porcupines which it would not have done if it had previously conveyed them to the Gregoires, which the latter never pretended so far as their acts disclose.

If the report of Leonard Jarvis to the General Court, made while the petition of the Gregoires was pending and before the conveyance to them might seem to conflict with Thompson's report made after actual survey, and the conveyances by the Gregoires and the Commonwealth in 1814 and 1820, its force must yield to the more conclusive character of the latter; especially as the General Court never took any action upon Jarvis' report but based all subsequent acts upon Thompson's.

The plaintiffs' record title comes through five mesne conveyances from Richard Higgins, whose deed of December 15, 1849, as before seen, conveyed no title to his grantee. But without relying solely upon their record title, the plaintiffs claim that their predecessors in interest have held the Island by open, notorious, exclusive adverse possession continuously for more than twenty years prior to the State's conveyance to the defendants in 1876; and that consequently they have a good, indefeasible title by adverse possession.

Assuming that such a title might be acquired against Massachusetts and Maine before the repeal of the statute bar in this State in 1885, the question remains, did the plaintiffs' predecessors acquire such a title.

Higgins' deed to the plaintiffs' father, Tobias Roberts, in 1849, conveyed no legal title, the grantor himself having none. But it constituted a semblance or color of title which the law recognizes as legitimate evidence on the question of adverse possession; the general rule being that an instrument purporting

by apt words to convey lands therein sufficiently described, gives the grantee color of title although the grantor, at the date of its execution, had no title whatever. *Little* v. *Megquier*, 2 Maine, 176; *Proprs. Ken. Purch.* v. *Laboree*, 2 Maine, 275; *Robison* v. *Swett*, 3 Maine, 316; *Ross* v. *Gould*, 5 Maine, 211; *Wright* v. *Mattison*, 18 How. 50; *Hall* v. *Dow*, 102 U. S. 461, 466.

Every presumption is in favor of possession being in subordination to the true title. *Codman* v. *Winslow*, 10 Mass. 146; *Ricard* v. *Williams*, 7 Wheat. 59; *Huntington* v. *Whaley*, 29 Conn. 391. If the possession be claimed to be adverse, the acts of the wrongdoer must be strictly construed and the character of the possession clearly shown. *Coburn* v. *Hollis*, 3 Met. 125, 128; *Jackson* v. *Sharp*, 9 Johns. 163.

While color of title is important evidence when coupled with possession under it as tending to show the extent of the grantee's claim, it does not of itself show possession. *Paine* v. *Hutchins*, 49 Vt. 317. Bare entry under a registered deed from one having no title works no disseizin of the true owner. *Noyes* v. *Dyer*, 25 Maine, 468; *Bates* v. *Norcross*, 14 Pick. 224. He does not become disseized even by a survey, allotment and due registration of such a deed without any open occupation or improvement of the premises. *Thayer* v. *McLellan*, 23 Maine, 417. While such a deed recorded is evidence of the extent of the grantee's claim, the registration is constructive notice only to those who would claim under the same grantor. *Tilton* v. *Hunter*, 24 Maine 29; *Spofford* v. *Weston*, 29 Maine, 145; *Roberts* v. *Bourne*, 23 Maine, 165, 169; *Veazie* v. *Parker*, 23 Maine, 170; *Little* v. *Megquier*, 2 Maine, 178. Said WILDE, J.: "To hold the proprietors of land to take notice of the records of deeds to determine whether some stranger has without right made conveyance of their land, would be a most dangerous doctrine and cannot be sustained with any color of reason or authority." *Bates* v. *Norcross*, 14 Pick. 224.

To effect a disseizin of the real owner, the entry under a registered deed from one having no title must be followed by an open, notorious, exclusive possession continued uninterrupt-

edly during the statute period ; and then, in the absence of any antagonistic possession, such adverse possession is deemed to be coextensive with the boundaries described in the deed under which the grantee claims title, although he has been in the visible occupation of a part only.   Maine cases, *supra ; Brackett* v. *Persons Unknown*, 53 Maine, 228, 238 ; *Crowell* v. *Bebee*, 10 Vt. 33.   And the essential notoriousness of the occupation is not lessened by the registration of the deed.   *Coburn* v. *Hollis*, 3 Met. 125 ; *Bates* v. *Norcross*, *supra*.

The law does not undertake to specify the particular acts of occupation by which alone a title by adverse possession can be acquired.   *Eastern R. R.* v. *Allen*, 135 Mass. 13, 16.   Every case must from sheer necessity be determined by its own peculiar circumstances ( *Webb* v. *Richardson*, 42 Vt. 465, 473) ; for the essential particular acts are as various as the nature and locality of real property, the purposes for which it is adapted or to which the owner or claimant may choose to apply it.   *Clancy* v. *Houdlette*, 39 Maine, 451, 457 ; *Ewing* v. *Burnett*, 11 Pet. 41, 53.

The doctrine of adverse possession rests upon the presumed acquiescence of him against whom it is held and such acquiescence rests upon notice express or implied, which is not to be presumed by the court but may be inferred from circumstances.   *Pray* v. *Pierce*, 7 Mass. 381 ; *Coburn* v. *Hollis*, *supra* ; *Culver* v. *Rhodes*, 87 N. Y. 348 ; *Clark* v. *Gilbert*, 39 Conn. 94.

The essential use and occupation unless expressly brought home to the knowledge of the owner, must be of such unequivocal character as will reasonably indicate to him visiting the premises during the statute period, that instead of their suggesting the probable invasion of a mere occasional trespasser, they unmistakably show an asserted exclusive appropriation and ownership.   *Tilton* v. *Hunter*, 24 Maine 32 ; *Ken. Proprs.* v. *Springer*, 4 Mass. 416 ; *Morse* v. *Williams*, 62 Maine, 446. "There must be overt acts which leave no room to inquire about intention and which amount to actual ouster."   *Worcester* v. *Lord*, 56 Maine, 265, 269.

A proper application of these principles must lead to a correct

decision of this case bearing in mind that the owner of one half of the property between 1853 and 1876, was the State.

The demanded premises consist of an entire island of granite, thirty to forty acres in extent, rising out of the Bay one hundred and ninety feet and situated more than one half mile from the nearest inhabited land. About one third of it on the north side is covered with a scrubby growth, with an occasional bush on the otherwise bald portion. On the northeast side, a few feet above the bay, is a comparatively level space of one or two acres, on which natural grass grows, and which has also caught in small spots where some soil had gathered in the depressions and crevices of the elevated portions. No part of the Island was ever cultivated or had any building whatever upon it. Before the fire ran over it in 1870, or a year or two later, there was a brush fence across a portion of it, occasionally repaired with more or less poles, which was so erected as to separate the level space from the higher portion and so constructed as to facilitate the catching of sheep; and whether that was its only use is not certain from the testimony.

The testimony of several witnesses called by the plaintiffs, when taken together, if entitled to full credit, tends to show that a few sheep were placed upon the Island in the spring and removed in the fall of "about every year," from 1850 to 1876 or 1877. The only witness who undertakes to fix the number, places it at "six or eight or a dozen." That the sheep there some of the seasons belonged to the plaintiffs' father, Tobias Roberts, the grantee of Higgins, and at other seasons to other persons by his permission; that the grass on the level portion was cut many of the years by Roberts, senior, or by his permission; and that he and his successors paid taxes several years laid by the assessors of Eden.

The fact that the assessors of Eden laid a tax of fifty cents on the Island in 1845 and 1846, or in any subsequent years prior to 1876, when the defendants purchased it, and that they were paid by Roberts, senior and his successors, could have no significance so far as Maine and Massachusetts are concerned, for it was not taxable by any town against either. R. S., 1003.

*Emerson* v. *Washington*, 9 Maine, 88. The payment of legal taxes is in no sense an act of occupation. *Little* v. *Megquier*, *supra* ; *Paine* v. *Hutchins*, 49 Vt. 314. And neither Maine nor Massachusetts had any notice of such assessment or payment or any reason to expect any such thing.

A substantial fence built round a parcel of land sought to be held by adverse possession and for the purpose of showing an adverse claim to the part enclosed, may be an act of such notoriety as to afford notice to all concerned of the builder's assertion of right (*Parker* v. *Proprs. L. and Canals*, 3 Met. 101 ; *Samuels* v. *Borrowscale*, 104 Mass. 207, 210) ; but when a brush fence is erected for the simple convenience of the builder, it can have no such significance. *Soule* v. *Burlow*, 48 Vt. 132 ; *Hayes* v. *Glidden*, 10 N. H. 307 ; *Coburn* v. *Hollis*, *supra* ; *Parker* v. *Parker*, 1 Allen 245 ; *Slater* v. *Jepherson*, 6 Cush. 129.

All that was done upon this comparatively barren, uninhabitable rock in the sea, with no stream or spring of fresh water thereon, was to take a little hay, feed down the grass which had caught in the spots of shallow soil and among the bushes, and throw up the short fence mentioned. Nothing of any value was ever put upon it except the temporary fence, flagstaff and short flight of steps erected by the Fremonts. *Thompson* v. *Burhaus*, 79 N. Y. 98.

If the agents of the State had seen everything there including the presence of the few sheep whether in or out of their pen, the cutting of the small quantity of grass which grew there spontaneously, all of which could be of no injury to the State and but slight benefit to the harvesters, they would hardly suspect that the authors of these acts were other than harmless technical trespassers.

Moreover, after a patient examination of the testimony of the plaintiffs' witnesses we do not feel at all satisfied that, assuming that the acts of alleged occupation were all that the Island was susceptible of, they were continuous. And by this we do not refer to the fact that they were periodical and suspended during the winter season ; for such a suspension might not necessarily be considered an abandonment. *Webb* v. *Haines*, 9 B. Mon. 388

(S. C. Am. Dec. 575). The examination-in-chief of the plaintiffs' witnesses upon this, as well as upon other points, is so markedly leading and the monosyllabic answers so implicitly respond to the obvious suggestion of the questions that a chill is cast upon the confidence of an impartial mind seeking for the real truth.

Again the plaintiffs themselves, though sons of Tobias Roberts, with all their means and opportunities of personal knowledge as well as of that derived from their father, declined to testify that the Island was occupied by him or his lessees every year before his conveyance to the Fremonts in 1870. And we are impressed with the conviction that, if they believed such to be the fact, one of them would not have gone to the auction sale so thoroughly advertised in 1876, and with the knowledge of his father who lived till 1879, and bid off the Island. Neither would they by admitted personal interviews and various letters from 1880 to 1883, have persistently tried to purchase not the defendants' interest or claim but the Island itself of the defendants, beseechingly importuning them for their price and making specific and constantly increasing offers for the "defendants' island." On the other hand they and their father would have notified the defendants when they purchased, or at some time before beginning this action thirteen years thereafter, that they took nothing by their purchase from the State. In a word, the testimony in relation to the kind and continuity of the occupation of Roberts, senior, is so general and of recent impression, and the facts as to the pasturing sheep and cutting hay by permission is so entirely hearsay that we cannot bring our minds to any other conclusion than that they are mere fungi,—of recent growth.

This court has already and recently declared that much more significant acts on wild and uncultivated land are not sufficient to disseize the real owner. *Chandler v. Wilson*, 77 Maine, 76; *Hudson v. Coe*, 79 Maine, 93.

If the plaintiffs have not been able to sustain the burden of proving by tangible facts that they have the better title of this island, whose only value consists in the market price of its granite, neither do we think they can prevail upon the intangi-

ble fiction of a presumption of a grant. The records of the Commonwealth made for the purpose of preserving and perpetuating the knowledge of its grants, have been diligently searched from the time of the adoption of its constitution down to the time of the trial, by a gentleman whose great experience in that and kindred matters is well known; and his testimony makes it morally certain that those records contain no mention of any grant of this island. Moreover, Higgins' deed to Roberts, senior, negatives such a theory. *Chase v. Alley,* 83 Maine, 537; *Doe v. Johnson,* 92 U. S. 243.

*Judgment for defendants.*

PETERS, C. J., WALTON, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.