# Nesmith T. Manly

## *v.*

# Daniel L. Pettee.

1. Tenants in common—*partition between them—its effect upon judgment creditors and purchasers.* A parol partition of lands between tenants in common, if followed up by a several possession, will be good, and will protect the portion allotted to each against a subsequent purchaser, or a judgment creditor of the other.

2. Same—*character of possession required.* But to give a parol partition that effect as to third persons, the several possession of the respective parties must be so open and visible, as to notify all persons interested in having such knowledge, that a change from a joint to a several possession has occurred.

3. Where the partition was between two tenants in common, the portion

Syllabus.

allotted to one being wholly unimproved and unoccupied, and that allotted to the other being occupied by a tenant who remained in the same possession he had had before, and the owner causing some ploughing to be done and some wood to be cut, it was held, such possession of one of the portions would not afford notice of a partition.

4. SAME—*where the partition is by deed—application of the registry laws*
And where the partition is by an interchange of deeds, the same character of possession which will protect the parties to a parol partition against third persons, will secure the rights of both, though their deeds remain unrecorded. And in such a state of case the question of parol partition would be immaterial, inasmuch as a several possession, by each party of his own, would be notice of the unrecorded deed.

5. If one of the parties, however, should neglect to put his deed upon record prior to the rendition of a judgment against the other, whose deed had already been recorded, the judgment being obtained subsequent to the partition, and no several possession was had so as to afford notice of the unrecorded deed, and the judgment creditor had no actual notice of the partition, his judgment would become a lien, not only upon the portion allotted to the judgment debtor, but also upon the undivided interest which the public records showed to be still in him in that portion allotted to his co-tenant.

6. SAME—*when the lien accrues before partition, effect of a partition.* There are many adjudged cases in which it has been held, that where a judgment or other lien is obtained against the undivided estate of a tenant in common, and partition is afterwards effected by judicial proceedings, the lien follows the partition and attaches to all the premises set off to the debtor, while the land allotted to his co-tenant or co-tenants is discharged.

7. And it is difficult to say why a different rule should be applied to a partition by act of the parties, if the division is shown to be fair and just. Whether this rule would be held to obtain in this State, except at the option of the lien-holder, our statute requiring incumbrancers to be made parties to a proceeding in partition, is a question upon which no opinion is given.

8. SAME—*where the lien accrues after partition.* But even conceding the ambulatory character of a lien, created before partition, upon the undivided estate of a tenant in common, the same doctrine will not apply to a lien acquired after partition, and without either actual or constructive notice that a partition had been made.

9. REGISTRY LAWS—*whether notice is afforded by recitals in instruments of record.* In this case, two tenants in common effected a partition by executing to each other quit claim deeds. A judgment was recovered against one of these parties after the partition, but before his co-tenant had put his deed upon record. The latter, to protect himself against the lien asserted by the

judgment creditor upon the undivided interest which the debtor had previously held in the land allotted to him, insisted the creditor had notice of his unrecorded deed by recitals in a deed of release, which was of record, and which was made under the following circumstances : Before the partition, Seward, the party resisting the asserted lien, had mortgaged all the lands which were the subject of the partition, to a third person, the mortgage purporting to convey the entire title. On the day these two co-tenants quit-claimed to each other, the mortgagee released the portion of the land allotted to Herrick, the other tenant and judgment debtor, from the mortgage, the deed of release containing this clause : " hereby intending to release the interest of Herrick in the lands embraced in said mortgage, and retain, as security for the payment thereof, that portion of said lands now owned by Seward." The deed purported to be made upon a consideration of one dollar, "and other good and valuable considerations," and referred to the mortgage simply by its date and the volume and page of its record. *Held*, that this recital, even taken in connection with the quit-claim deed from Seward to Herrick, which was of record, afforded no notice that the partition had been made, or that Seward held an unrecorded deed from Herrick.

10. SAME—*instruments of record, to afford notice, must lay in the proper chain of title.* Besides, neither the deed from Seward to Herrick, nor the release from Seward's mortgagee, as they related only to the land owned by Seward in that portion allotted to Herrick, in the partition, lay in the chain of Herrick's title to a different tract of land—that allotted to Seward—and were not, therefore, instruments which a purchaser from Herrick of such different tract or a judgment creditor of Herrick, would have been obliged to notice.

11. In no manner whatever could Seward encumber or diminish Herrick's estate, and a person dealing with him in regard to his estate in certain lands, would be under no obligation to search the records for the purpose of ascertaining what recitals a mortgagee of Seward had thought proper to introduce into an instrument made by him, and relating not to the title of Herrick, but to the estate of another person, with whom the judgment creditor had nothing whatever to do.

WRIT OF ERROR to the Superior Court of Chicago.

The case is fully stated in the opinion of the court.

Messrs. HOYNE, MILLER and LEWIS, for the plaintiff in error.

Messrs. JAMESON and HIBBARD, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 23d of October, 1856, one John M. Seward and one William B. Herrick, being equal owners as tenants in common of certain lands situate on sections 11, 12, 13 and 14, township 40 N, range 4 E, for the purpose of effecting a partition, executed to each other quit-claim deeds. Seward conveyed to Herrick his interest in the land on section 13, and Herrick to Seward his interest in the residue of the lands. The partition is proven to have been fair and just. The deed to Herrick was recorded March 4th, 1857, and that to Seward not until January 28th, 1862. On the 25th of February, 1857, Herrick mortgaged to one Macalister, the land allotted to him, to secure the payment of $20,000, which mortgage was recorded March 7th, 1857. On the 6th of May, 1857, Pettee, the defendant in error, recovered a judgment in the Superior Court of Chicago, against Herrick, for $3,453, on which execution was issued within the year. Subsequently, Pettee sued out another execution, and was about to sell, under it, an undivided half of the land on sections 11 and 12, allotted to Seward in the partition, when Manly, the plaintiff in error, who held by a series of conveyances under Seward, all of which were made after the recovery of Pettee's judgment, filed his bill in chancery to enjoin the sale and quiet his title. The case proceeded to a hearing, and the court below dismissed the bill.

It is urged by the plaintiff in error, that notwithstanding the non-registry of the deed from Herrick to Seward, at the date of the recovery of the judgment against the former, the undivided half of the lands on sections 11 and 12, which had belonged to Herrick before the partition, and still stood in him upon the record, was not subject to the lien of the judgment. It is so claimed upon several grounds. The counsel for the plaintiff in error first insists, inasmuch as the title of tenants in common is several, and the only unity between them the unity of possession, that a parol partition, if followed up by a several possession, in accordance with the partition, is good, and that the plaintiff in error should not be placed in a worse position, in consequence of failing to register his deed, than he would

occupy if he had no deed at all. This would be perfectly true if there had been such a change from a joint to a several possession as would be necessary to make a parol partition good. For that purpose, at least as to third persons, the several possession of the respective parties must be so open and visible as to notify all persons interested in having such knowledge, that a change of possession has occurred. But in the case at bar there was no such change of possession as would amount to notice or put parties upon inquiry. If there had been, the question of parol partition would have been immaterial, inasmuch as a several possession, by each party of his own, would have been notice of the unrecorded deed. But there was no possession at all taken by Seward of his allotment, prior to the rendition of the judgment. This portion of the lands was, and continued to be wholly unimproved. There was already a tenant on the land allotted to Herrick, who remained in the same possession that he had had before. Herrick himself caused some ploughing to be done, and wood to be cut before the rendition of the judgment. This was all that would indicate a change of possession or a partition. In order to affect third persons claiming a lien upon or an interest in the land allotted to Seward, the title to an undivided half of which the public records showed to be in Herrick, it is clear that there must have been such a several possession by Seward, of his allotment, as would at least put parties upon inquiry. We must hold this, or we substantially repeal our registry laws. Those laws place the purchaser and the judgment creditor upon the same footing, and if, under the circumstances of this case, the defendant in error instead of obtaining a judgment lien, had purchased of Herrick the undivided half of the land allotted to Seward, would it be contended that Herrick's possession of *his* allotment would be notice of Seward's title to his, either by a parol partition or under an unrecorded deed. It is a question about which there can be no discussion, and the same rule must be applied to the case of judgment creditors.

The counsel for the plaintiff in error also insists, that where

a judgment or other lien is obtained against the undivided estate of a tenant in common, and partition is afterwards made, the lien follows the partition and attaches to all the premises set off to the debtor, while the land allotted to his co-tenant or co-tenants is discharged.    There are many adjudged cases in which this has been held, where the partition was effected by judicial proceedings, and we agree with the counsel for the plaintiff in error, that it is difficult to say why a different rule should be applied to a partition by act of the parties, if the division is shown to have been fair and just.    Whether this rule would be held to obtain in this State, except at the option of the lien-holder, our statute requiring that incumbrancers should be made parties to a proceeding in partition, is a question upon which we do not desire to be understood as expressing an opinion.    In the case of *Loomis* v. *Riley*, 24 Ills. 307, it was decided that where a mortgage was made upon an undivided interest, *pending the suit for partition*, the lien would be confined to the premises allotted to the mortgagor, but that case was decided solely upon the ground that the incumbrance was created *pendente lite.*

But conceding, merely for the purposes of this case, all that is claimed by the counsel for plaintiff in error, as to the ambulatory character of a lien, created before partition upon the undivided estate of a tenant in common, we still can not concur in the inference thence drawn by counsel, that the same doctrine would apply to a lien acquired after partition upon the estate of a tenant in common, and without either actual or constructive notice that a partition has been made.    We speak, of course, of partition by act of the parties, as, where the partition is by judicial proceedings, there would be constructive notice.    In regard to a lien obtained after partition without notice, the equities of the parties, in connection with our registry law, would be widely different from what they would be in the case of a lien acquired before partition.    To illustrate from the case at bar:    If Pettee had obtained his judgment before partition, no injustice would be done to any parties by con-

fining his lien after partition, to the land allotted, in severalty, to Herrick. The division of the premises being just, he would have the same amount of property out of which to make his debt, that he would have had, if the lands had remained undivided. And if there had been a lien older than his, as is the Macalister mortgage in the actual state of facts, Pettee would still occupy no worse position by holding that his lien followed the partition. He could still subject to his judgment the same amount of property that he could have reached had there been no partition, and which is the material thing to be considered. His position would be in no respect made worse in consequence of Seward's failure to record the deed from Herrick, by which the partition was in part effected, or in consequence of his having neither actual nor constructive notice that a partition had been made. He would have become the creditor of Herrick upon the faith that Herrick owned only an undivided half of the lands, and he is neither deceived nor injured by having that undivided transmuted into a divided half, of equal value, without notice to him, and by a private arrangement between the parties.

But how would his equities be affected by holding that the lien follows the partition and is restricted by it, in the actual state of facts? By the public records of the country, upon the faith of which men have the right to act, at the time Pettee obtained his judgment, Herrick was the sole owner of the land on section thirteen, and the owner of an undivided half of the lands on sections eleven and twelve, which had been conveyed to Seward by the unrecorded deed. We are not permitted to repeal our registry laws by distinctions drawn from the common law definition of tenancy in common, and by the doctrine that partition of such estate is simply the severance of the unity of possession. While all this is true, as urged by the counsel for the plaintiff in error, the broad fact remains, plain and undeniable, that notwithstanding the partition, Herrick was still, upon the records, the owner of an undivided half of the lands on sections eleven and twelve, and all persons had the right,

in the absence of notice from some other source, to purchase from him, or to furnish him credit and take a lien, acting upon the belief that those records showed the absolute truth as to the title. When Pettee furnished the credit upon which his judgment was afterwards obtained, the law presumes that he furnished it upon the faith that Herrick was the owner of all real estate which stood in his name upon the records, and for the sake of certainty, the presumption is made to apply to the time when Pettee obtained his judgment. This presumption may not have been true, as a matter of fact, but it is the theory upon which our recording laws give purchasers and judgment creditors the same degree of protection, and is one of those legal presumptions which the law does not permit to be disputed. Having, then, given credit, as the law presumes, upon the faith that Herrick owned an undivided half of the lands in sections eleven and twelve, and the Macalister mortgage for $20,000 having priority as to the land on section thirteen, can we restrict him to his junior lien upon the latter land, merely because we might do so, if his judgment had been obtained before the partition was made. In the one case the *laches* of Seward in failing to record his deed could have neither injured nor misled him. In the other the law presumes it to have misled him, and if we were to apply the doctrine insisted upon by the counsel for plaintiff in error, we would take from him the means of securing payment of a debt which, upon the theory of our registry law in protecting judgment creditors, he would not have contracted, if the deed had been recorded. It is undoubtedly hard that a portion of the land which in fact belongs to Seward or his grantees, should be taken for the payment of Herrick's debts, but it is the consequence of Seward's own negligence, and the hardship is no greater than in any other case in which a second is preferred to a first purchaser, who has failed to record his deed. The law furnished Seward the means of protecting his title, and if he neglected to avail himself of them, neither he nor his grantees can claim any equity against him who has dealt with Herrick

upon the faith which the law authorized him to place in the public records.

There is another circumstance in this case to which we have not yet adverted, and upon which the counsel for the plaintiff in error places some reliance, as notice to Pettee of the unrecorded deed. Before the partition, John M. Seward made a mortgage upon all these lands to John B. Seward, purporting to convey the entire title. On the same day that John M. Seward quit-claimed to Herrick the north half of section 13, John B. Seward released the same land from the lien of the mortgage. The deed of release contained the following clause: "Hereby intending to release the interest of William B. Herrick in the lands embraced in said mortgage, and retain as security for the payment thereof, that portion of said lands now owned by John M. Seward." The release related only to the north half of 13, and referred to the mortgage by its date and the volume and page of its record, and in no other way. The deed purports to be made upon a consideration of one dollar "and other good and valuable considerations." No allusion whatever is made in it to a partition between John H. Seward and Herrick, or to the deed from the former to the latter. The release was duly recorded. What there is in this recital to give any indication to Pettee of a partition having been made, we are unable to perceive. The instrument releases the lien of the mortgage upon a title which Seward had held to land on section thirteen. It reserves the lien of the mortgage upon all other lands covered by the mortgage and owned by John H. Seward. How can this indicate that Herrick had lost *his* title to any portion of his own estate. The release, taken in connection with the quit-claim deed from John H. Seward, notwithstanding the latter purported to be upon a consideration of one dollar, no more indicated a partition of these lands held in common, than it did any other transaction by means of which Herrick had acquired Seward's title, and had arranged with the mortgagee to release his lien. The form and consid-

eration of the deed indicated nothing, as such deeds are not at all peculiar to cases of partition.

Besides, neither the deed from John H. Seward to Herrick, nor the release from John B. Seward, as they related only to the land owned by John H. Seward on section 13, lay in the chain of *Herrick's* title to a different tract of land, and were not, therefore, instruments which a purchaser from Herrick of such different tract would have been obliged to notice, and the same rule would hold as to a judgment creditor. In no manner whatever could the Sewards encumber or diminish Herrick's estate, and a person dealing with him in regard to his estate in certain lands, would be under no obligation to search the records for the purpose of ascertaining what recitals John B. Seward had thought proper to introduce into an instrument made by him, and relating, not to the title of Herrick, but to the estate of another person, with whom Pettee, the judgment creditor, had nothing whatever to do.

It is also urged that Herrick's several possession of the land on section 13, is constructive notice of Seward's several title to the lands allotted to him in the parol partition. We have already incidentally said all that we deem necessary on this point in speaking of partition by parol.

*Decree affirmed.*