## BARNES v. STONEBRAKER.

No. 850.   Opinion Filed March 9, 1909.

Rehearing Denied January 24, 1911.

(100 Pac. 579.)

1.   INDIANS—"Alienation of Lands"—What Constitutes—Oil and Gas Leases—Validity.   An oil and gas lease is an "alienation" of lands, within the meaning of the "Original Agreement" (Act March 1, 1901, c. 675, 31 Stat. 849), section 7, and, where made of the homestead of a deceased citizen by blood of the Creek Nation, by her heir before the expiration of five years from the ratification of that agreement, is void.

2.   INDIANS—Alienation of Allotments—Options.   The sale of an option to purchase the land, contained in an oil and gas lease of the homestead of a deceased citizen by blood of the Creek Nation, made by her heir before the expiration of five years from the ratification of the "Original Agreement" (Act March 1, 1901, c. 675, 31 Stat. 848) is void under said act and section 16 of an act approved June 30, 1902 (Act June 30, 1902, c. 1323, 32 Stat. 503), and will not be specifically enforced.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory, at Tulsa; William R. Lawrence, Judge.*

Ejectment by Howard M. Stonebraker against George W. Barnes, Jr.   Judgment for plaintiff, and defendant brought error to the United States Court of Appeals for the Indian Territory, whence the cause was transferred to the Supreme Court of the state of Oklahoma.   Reversed and rendered.

On June 22, 1905, Howard M. Stonebraker, defendant in error, plaintiff below, sued George W. Barnes, Jr., plaintiff in error, defendant below, in the United States Court for the Indian Territory, Western District, at Sapulpa, in ejectment to recover the N. W. 1/4 of the S. W. 1/4 of section 12, township 19, north of range 12, east of the Indian Base and Meridian in the Creek Nation, Ind. T., containing 40 acres, more or less, and, after deraigning his title through Moses Neharkey, sole heir at law of Wehiley Neharkey; prayed judgment for possession and $1,000 damages for its unlawful detention. After general demurrer, which was overruled, defendant, on January 3, 1906, filed answer, in substance a general denial of title in plaintiff, and, by way of cross-petition, set up right of possession thereto in himself by virtue of an oil and gas mining lease from said Moses Neharkey, containing an option to purchase for $1,600, to be paid on or before July 1, 1914, which he says, in effect, ran with the land, which said sum he alleged theretofore a tender, together with demand for a deed as stipulated therein, and then and there renewed his tender and paid into court said sum, and, after alleging the death of said Moses Neharkey, and the names of his widow and heirs, in substance, prayed that the cause be transferred to the equity docket; that they be made parties defendant, and required to answer; that the court determine to whom was due said $1,600; and that said contract to convey be specifically performed by deed to himself from defendant, and said heirs of Moses Neharkey, and for general relief. After the cause was transferred as prayed, on June 30, 1906, the same, by stipulation of counsel, was transferred to the United States Court for the Indian Territory, Western District, at Tulsa where, on November 7, 1906, the same came on for trial on an agreed statement of facts, in substance, that Wehiley Neharkey prior to her death was a duly enrolled citizen by blood of the Creek Nation; that on September 26, 1899, without having selected her allotment, she died intestate, leaving her surviving, as her only heir at law, Moses Neharkey, also duly enrolled as such,

leaving no child surviving born after May 25, 1901; that on Oc-
tober 28, 1901, said Moses Neharkey appeared before the Dawes
Commission as sole heir aforesaid, and selected, as the allotment
of said Wehiley Neharkey, certain lands for which a certificate of
allotment was then and there issued to the heirs of said Wehiley
Neharkey, out of which said commission on February 13, 1904, de-
signated as her homestead the lands in controversy in this cause;
that on June 23, 1904, said Moses Neharkey executed and deliv-
ered to plaintiff in error, hereinafter called defendant, an oil and
gas lease containing the following:

"The grantors further agree to sell, and the grantee to pur-
chase the lands above described for the sum of $1,600, to be paid
on or before the 1st day of July, 1914, and upon the tender of said
amount, the grantors agree to execute a fee-simple title to said
property, by a good and sufficient warranty deed, with relinquish-
ment of dower and homestead. If, however, the grantee fails to
comply with this contract, then the obligation of the grantor to
sell and of the grantee to purchase, shall be null and void.  Pro-
vided, however, that the second party shall have right at any time,
to terminate this grant, by notice in writing, or by surrendering
this grant, and shall thereafter be released from the obligations
and liabilities under the same. If, however, the grantee fails to
comply with this contract then the obligation of the grantors to
sell and the obligation of the grantees to purchase shall be null and
void"

—which said lease was, on July 24, 1904, duly filed for record,
and recorded in the office of the clerk of the United States Court
for the Indian Territory, Western District, at Sapulpa; that on
July 5, 1904, P. Porter, as Principal Chief of the Creek Nation,
executed a patent for said homestead tract to the heirs of Wehiley
Neharkey, and on the same day a like patent to said heirs of her
said surplus allotment, which said patents were, on September 6,
1904, duly approved by the Secretary of the Interior, and on Sep-
tember 16, 1904, duly recorded by said commission; that on June
7, 1905, defendant took and had since retained actual possession
of the lands described in said lease, and on August 14, 1905, com-
pleted thereon the drilling of a dry well, and has erected thereon a

house 15x20 feet, with box sides and floor and a canvas roof; that on December 30, 1903, said Moses Neharkey executed and delivered to defendant in error, Howard M. Stonebraker, hereafter called plaintiff, an agricultural lease of said entire allotment for five years from that date, which was duly filed for record; that on April 5, 1905, said Moses Neharkey and wife for value executed and delivered to Grant C. Stebbens a warranty deed to the land in controversy, which was duly recorded; that on May 13, 1905, Grant C. Stebbens and wife executed and delivered to A. F. Ault for value a quitclaim deed to said land, which was duly recorded; that on May 23, 1905, Moses Neharkey and wife also executed and delivered to said Ault for value a quitclaim deed to said land, which was duly recorded; that on June 3, 1905, said Ault and wife for value executed and delivered to plaintiff a warranty deed to said land, which was duly recorded; that on June 14, 1905, plaintiff served on defendant a notice in writing to quit on or before a day certain; that on September —, 1905, defendant deposited in bank the $1,600 agreed upon in the lease of June 23, 1904, and on September 13, 1905, served on plaintiff and Moses Neharkey a notice to that effect, and demanded specific performance of the contract therein contained, and on January 3, 1906, also paid said sum into the hands of the clerk of the United States Court for the Indian Territory, Western District, subject to the order of the court in this cause; and that on December —, 1905, Moses Neharkey died, leaving him surviving Milley Neharkey, his widow, and, as his only heirs at law, Sammir Neharkey and Milly Neharkey, minors. Whereupon, on February 11, 1907, the court rendered a decree, in effect, dismissing defendant's answer and cross-complaint for want of equity, and granting to plaintiff possession of the property sued for, and, a jury being waived, assessed his damage for the unlawful detention at $300, to all of which defendant excepted, and prosecuted his appeal to the United States Court of Appeals for the Indian Territory, and the same is now before us for review as successor to that court.

*Preston C. West, N. A. Gibson, George S. Ramsay,* and *D. W. Tancy,* for plaintiff in error.

*C. J. Wrightsman* and *James B. Diggs,* for defendant in error.

TURNER, J. (after stating the facts as above). Among the many reasons why the court did not err in holding, in effect, that no defense had been interposed to this suit, is that the lease upon which defendant relies to defend his possessions of the property in controversy is void. The property therein described was the homestead of Wehiley Neharkey. It was allotted as such October 28, 1901, which Moses Neharkey took as her sole heir. The agreement under which it was so allotted was approved March 25, 1901, and provided:

"Lands allotted to citizens hereunder shall not in any manner whatsoever or at any time, be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the date of the deed to the allottee therefor and such land shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land as a homestead which shall be nontaxable and inalienable and free from any incumbrance whatever for twenty-one years, for which he shall have a separate deed, conditioned as above: Provided, that selections of homesteads for minors, prisoners, convicts, incompetents, and aged and infirm persons, who cannot select for themselves, may be made in the manner herein provided for the selection of their allotments; and if, for any reason, such selection be not made for any citizen it shall be the duty of said commission to make selection for him. The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation free from such limitation."

It has been held by this court, in *J. R. Sharp et al. v. O. M. Lancaster,* 23 Okla. 349, 100 Pac. 578, that an oil and gas mining

lease is an alienation within the inhibition of that part of this section providing "that such lands shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement except with the approval of the Secretary of the Interior," and as the lease in question was executed June, 23, 1904, the same falls squarely within that inhibition, unless, as contended by defendant, on the death of Wehiley Neharkey all restrictions on the homestead were removed by the last sentence of said section. With this contention we cannot agree, but are constrained to hold as we, in effect, held in *De Graffenreid v. Iowa Land & Trust Co.*, 20 Okla. 687, 95 Pac. 624, that the limitation last referred to in said section is the limitation that the homestead "shall be nontaxable and inalienable and free from all incumbrances whatever for twenty-one years," and had no reference to the limitation providing "that said lands shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement except with the approval of the Secretary of the Interior," leaving the five-year limitation on alienation still attaching to the entire allotment. This was, in effect, the holding of Frank L. Campbell, Assistant Attorney General of the Interior Department, in an opinion rendered August 10, 1906, in a controversy over certain royalties accruing, under an oil and gas mining lease executed by the heirs of one William Colbert, deceased, a Creek Indian. Said heirs had, prior to April 26, 1906, executed a deed to the homestead of the allottee, and the grantees therein demanded from the Indian agent the royalties accruing under the lease on the homestead of the allottee. The opinion says:

"This section (section 7 of the Original Agreement [Act March 1, 1901, c. 675, 31 Stat. 849]) in its first paragraph makes a clear, emphatic, and unequivocal inhibition against the alienation of any part of the allotted lands within 5 years, or until May 25, 1906, except by approval of the Secretary of the Interior. The words are general, and include the homestead as well as other lands. The second paragraph makes a further and longer term of inalienability of 21 years for the homestead lands, without power

to the Secretary of the Interior to shorten it.    The third paragraph, continuing to deal with the homestead, limits its descent to particular heirs, issue born after May 25, 1901, excluding other issue, and excluding any power of the allottee by will to defeat the descent to the particular heirs.    It then provides that if there are no particular heirs, he may dispose of the homestead by will, free from limitation herein imposed, and that if he makes no will, the homestead shall descend to his heirs free from such limitations.    There are two distinct limitations against alienation, one for 5 years applying to all allotted lands, and a second for 21 years applying to homestead lands.    The latter does not in term, nor by any necessary implication, exclude operation of the former.    It is an added and further one for nonalienation of the homestead.    Through the second and third paragraph of the section there is a continuity of subject and thought, viz., the homestead, and all provisions of both paragraphs have reference thereto. Nothing in the act indicates an intent of Congress to make title of inherited homestead lands freer of alienation by heirs of a decedent than the lands not of homestead character.    On the contrary, the only distinction made by Congress between the homestead and other land was to make them less alienable.    I am therefore of the opinion that the words 'limitation herein imposed' and 'such limitation' have reference to the 21-year limitation against alienation of homestead lands, and have no reference to the 5-year general limitation against the alienation of any allotted lands."

We are therefore of the opinion that this lease falls within the 5-year inhibition against alienation by the allottee or his heirs, and, not having received the approval of the Secretary of the Interior, is void.    Nor did the court err in refusing to decree specific performance of that part of the lease above set forth, for the reason, among other things, that the same, being, in effect, the sale of an option on the homestead which might be closed within said prohibitive period at the pleasure of the grantee, is violative of the spirit of section 7, *supra,* and section 16 of the Supplemental Agreement (Act June 30, 1902, c. 1323, 32 Stat. 503), which, in effect, retains said 5-year limitation and falls within that class of contracts declared void by the last sentence of said section, which

provides that any agreement or conveyance of any kind or character, violative of any of the provisions of this paragraph, shall be absolutely void, and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity. The word "paragraph" as here used is synonymous with the word "section" (Webster's Inter. Dict.; *McClellan v. Hein et al.*, 56 Neb. 600, 77 N. W. 120; *Marine v. Packham*, 52 Fed. 579, 3 C. C. A. 210), and refers to said section 16, and means that this option is not only void because sold within said prohibitive period, but, after that period has expired, is not susceptible of ratification in any manner. This provision was on the statute books when this option was sold, and seems to have been leveled directly at such sales; for what would it profit to make the allotment of a deceased allottee, in the hands of his heirs, inalienable for 5 years, and at the same time permit them to sell an option thereon which might be closed by the purchaser within that time? It goes without saying that such would be contrary to the spirit of the law, and would defeat the limitation.

But plaintiff must recover on the strength of his own title, and it now becomes our duty to test the strength of his chain, and determine whether the same is sufficient upon which to base a recovery. His contention that defendant's lease is void because made within the prohibitive period of 5 years without the approval of the Secretary of the Interior being sustained, he has thereby digged a pit into which every conveyance in his chain of title, back to Moses Neharkey, under whom both claim, must fall; that is, the deed from Moses Neharkey to Grant C. Stebbens, dated March 5, 1905, from said Stebbens and wife to A. F. Ault, dated May 13, 1905, from said Moses Neharkey and wife to said Ault, dated May 23, 1905, and from said Ault and wife to plaintiff, dated June 6, 1905, and that, too, for the same reason.

The heirs of Moses Neharkey are not before the court, and we can afford them no affirmative relief. It follows that while the court did not err in holding that defendant had interposed no defense to this suit, and was entitled to no relief on his cross-

complaint, yet the court did err in holding that plaintiff had title to the property in controversy of strength sufficient to recover, and that he was entitled to the possession thereof, together with damages and costs, and for that reason this case is reversed and rendered, and the costs in this court will be ordered equally divided between plaintiff and defendant.

All the Justices concur.