## TATE v. GAINES.

No. 312.   Opinion Filed November 9, 1909.

(105 Pac. 193.).

INDIANS—Contracts—Void Conveyance of Land—Reconveyance—Recovery by Vendee of Price Paid. An allottee of land in the Creek Nation, which was inalienable by virtue of the provisions of Act Cong. March 1, 1901. c. 676, sec. 7, 31 Stat. 863, for a valuable consideration made, executed and delivered a warranty deed thereto, and accompanied the same with a contract, which provided substantially that, should the said grantor at any time become dissatisfied with the sale or fail or refuse to carry out the provisions of the deed. she would pay to the grantee, his heirs or assigns, all money paid for the purchase price of said land, and for all improvements made thereon, less a reasonable allowance for rents for the use of the land during the time grantee held it. The grantor exercised her right of repossessing herself of the land without a repayment of the moneys as agreed in the contract. Grantee brought suit for the same, and at the same time tendered a deed of reconveyance of the land. To his petition setting up substantially the foregoing facts, a demurrer was filed, which was by the trial court sustained. **Held**, error.

(Syllabus by the Court.)

*Error from District Court, Seminole County; A. T. West, Judge.*

Action by Henry M. Tate against Phœbe Gaines. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*J. A. Baker,* for plaintiff in error.—Citing: *Nevins v. Dox,* 34 N. Y. 307; *Wheeler v. Reynolds,* 66 N. Y. 232; *Ohio Life Ins. Co. v. Merchants' Ins. & Trust Co.,* 11 Humph. 1, 53 Am. Dec. 742; Story, Eq. Jurisp., sec 298; *Johnson v. Evans,* 8 Gill (Md.) 155; *Hunt v. Turner,* 9 Tex. 385; *Bernard v. Taylor,* 23 Ore. 416; *Brooks v. Martin,* 2 Wall. 70; *Blair v. Gibbs,* 17 How. 232.

*Crump, Rogers & Harris,* for defendant in error.—Citing: *Lindsay v. Rottaken,* 32 Ark. 618; *U. S. Bank v. Parsons,* 2 Pet. 527; Creek Treaty approved February 26, 1901, sec. 7.

DUNN, J. On June 1, 1906, there was filed by plaintiff in error, as plaintiff in the court below, a complaint at law in the office of the clerk of the United States Court for the Western District of the Judian Territory, in which it was alleged: That on the 29th day of October, 1901, defendant, for a good and valuable consideration, sold, transferred, and delivered to plaintiff a certain tract of land, describing it, in the Creek Nation of the Indian Territory. At the time of the execution of the deed, the parties entered into a contract, in which it was agreed that, in the event the grantor should at any time become dissatisfied or fail to carry out the provisions of the sale or recover the land, she would first repay plaintiff all moneys which he had paid therefor or expended for improvements on the same, less a reasonable sum for rent thereof. That under and by virtue of these agreements, plaintiff entered into possession of the land, broke and cleared it at an expense, which, including the price paid for the same, amounted to $858. That thereafter, and in 1903, the defendant caused the Indian agent to remove the plaintiff from the land and repossessed herself thereof, and that she and her successors and assigns had continued in possession to the date of the bringing of the action. The contract referred to, which was signed by both grantor and her husband, provides that:

"Whereas, said sale is against the provisions of the law; and, whereas, said H. M. Tate, has in good faith paid us a valuable consideration, and we have in good faith sold the said land to the said H. M. Tate: Now this is to further agree with the said H. M. Tate, that if at any time we should become dissatisfied with said sale and fail or refuse to continue to carry out the provisions of said sale, or should we or either of us, our heirs or assigns, ever at any time fail or refuse to carry out the provisions of said sale, or undertake to recover the said land, we or either of us, our heirs or assigns, shall first pay to the said H. M. Tate, his heirs or assigns, all money he has paid for the purchase price thereof and for all improvements the said H. M. Tate shall have

made on the said land, less a reasonable amount for rents of said lands for the time he shall have used the same."

At the time plaintiff filed his action, he made and executed a warranty deed to the tract of land warranting title thereunder against all persons claiming by, through, or under him, and tendered the same to the defendant.

It is agreed by both parties that under and by virtue of Act Cong. March 1, 1901, c. 676, § 7, 31 Stat. 863, entitled "An act to ratify and confirm an agreement with the Muskogee or Creek Tribe of Indians, and for other purposes," the land was inalienable by the grantor, and that any deed which she made was absolutely void and of no force or effect, as a conveyance, and it is the contention of counsel for defendant that no recovery can be had on the contract on which this action is based, for the reason that it relates to money paid and expended in carrying out a contract, part of which at least was void; that money so paid or expended cannot be recovered upon the recipient thereof exercising the right of repudiation. A contract which the law denounces as void is necessarily no contract whatever, and the acts of the parties in an effort to create one in no wise bring about a change of their legal status. The parties and the subject-matter of the contract remain in all particulars just as they did before any act was performed in relation thereto. So that in the case at bar, when defendant made, executed, and delivered to plaintiff her deed to the tract of land, both parties knew, and are held to have known, that no transfer took place, that the grantor still owned the land and was still entitled to its possession, and that the grantee received naught for the money he paid, except the grantor suffered him to go into possession of the land. In other words, the grantor refrained from excluding defendant, and he held possession because of the absence of the exercise of a right of which his grantor was in full possession. There was nothing, however, illegal in this transaction—no act upon which the state visited its condemnation by penalty or punishment. That which was done was not *malum in se*, but was just within the domain of *malum prohibitum*, upon which the law visited no punishment severer

than the declaration that any act seeking to effect a transfer of this land would be void, and that no transfer would be effected —that it was inalienable. Also, the only effect which the deed plaintiff made and tendered to defendant would have would be evidence of his acquiescence so far as he was concerned in defendant's title and to clear the record. It would take nothing from plaintiff which he had, and it would in fact give defendant nothing that she did not already possess. Now, with the foregoing consideration before us, and with a clear understanding of the relationship of the parties, what in fact did they accomplish' by their effort to deal? No law prohibited defendant from acquiescing in plaintiff's possession of the land involved. No law prohibited defendant from inducing plaintiff to improve the land. Both parties knew, as is evidenced and made manifest by the contract, that this was virtually all defendant was yielding and all that plaintiff was securing. Under the contract and the law, defendant yielded possession *in praesenti,* or from day to day, and plaintiff secured it in the same way. Such a possession creates a tenancy at will.

A case in which a similar question was involved is *Rogers et al. v. Hill,* decided by the Court of Appeals of the Indian Territory, reported in 3 Ind. T. 562, 64 S. W. 536. In that case, as in this, there was an invalid conveyance or contract of sale, and of the possession of the grantee the court said:

"It has been uniformly held that possession under an invalid conveyance or contract of sale creates a tenancy at will, and where a tenant goes into possession under an invalid lease his tenancy at its inception is merely a tenancy at will. *Hull v. Wallace,* 88 Cal 434, 26 Pac. 360; *Packard v. Railroad Co.,* 46 Ill. App. 244; *Lehman v. Nolting,* 56 Mo. App. 549; *Howard v. Merriam,* 5 Cush. (Mass.) 583; *McIntosh v. Lee,* 57 Iowa, 356, 10 N. W. 895."

A "tenancy at will" is defined by the Supreme Court of Maine in the case of *Cunningham v. Holton,* 55 Me. 33, 36, as follows:

"A 'tenancy at will' is an estate which simply confers a right to the possession of the premises leased for such indefinite period

as both parties shall determine such possession shall continue. The estate may arise by implication as well as by express words."

So, while the conveyance was wholly void and of no effect in itself, the possession of the grantee amounted to a tenancy at will, not made so by the void conveyance, but because out of the effort to deal came a permission to enter the land relieving grantee of the imputation of and liability for trespass. In order to secure this possession, grantee offered, and had accepted by grantor, a certain sum of money, and within the understanding of the parties grantee was to improve the land while permitted to remain in possession. Neither party apparently knew how long this possession would continue, but both agreed that, when terminated, if by the naked exercise by grantor of her inalienable right of repossession, grantee should be repaid, less a reasonable rental, that which he had expended. Can this repayment be enforced?

Mr. Page, in his recent work on Contracts, volume 1, at section 510, says:

"If A. makes a promise to B., consisting of two or more covenants upon valuable and legal consideration, and one of the covenants made by A. is void by reason of its subject matter, but not illegal, then the legal covenant can be enforced whether the contract is severable or inseverable."

And at section 543 the same author says:

"If a contract is merely void as distinguished from illegal, a contract collateral to it and in aid of it is not thereby invalidated. This follows from the rule that a void covenant in an inseverable contract does not invalidate the remaining valid covenants."

To our minds the principle enunciated in the foregoing quotations is applicable to the relationship existing between the parties in the case at bar, and there is no reason we can perceive why the defendant, having secured from plaintiff under the arrangement mentioned in this case the money and property involved, should be permitted, upon repossessing herself of the consideration therefor, to retain both. A reasonable rental is certainly all that she has a right to claim. To this she agreed when she received it, and the overplus of plaintiff's property in her pos-

Vol. 25—10

session does not belong to her, and she should be willing by all the considerations of honesty, good faith, and good conscience, to account therefor. She should not want to keep it if she could, and the law will not permit it if she would.

A case somewhat similar to the one at bar is that of *Logan County National Bank v. Townsend,* 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107, which was a case in which the Logan County National Bank purchased from Townsend certain bonds of Logan county, Ky., under an agreement that it would, upon plaintiff's demand, replace to him at the price paid or less; that, on demand being made on the bank, it refused to comply, setting up that its agent had no right, authority, or power to make the contract set out in the petition; that the same was a gambling transaction and a dealing and betting upon the future value of the bonds, and it was urged that the act was *ultra vires* the power of the bank and void. The Supreme Court, in rejecting these contentions, held that, notwithstanding the fact that the contract was *ultra vires* and void, the bank could not retain the bonds without accounting to plaintiff for their value. In passing Justice Harlan said:

"It would seem, upon defendant's theory of its powers, to be too clear to admit of dispute that the act of Congress does not give a national bank an absolute right to retain bonds coming into its possession by purchase, under a contract which it was without authority to make. True, it is not under a duty to surrender possession until reimbursed the full amount due to it. It has the right to hold the bonds as security for the return of the consideration paid for them; but when such amount is returned, or tendered back to it, and the surrender of the bonds is demanded, its authority to retain them no longer exists, and, from the time of such demand and its refusal to return the bonds to the vendor or owner, it becomes liable for their value upon grounds apart from the contract under which it obtained them. It could not rightfully hold them under or by virtue of the contract, and at the same time refuse to comply with the terms of purchase. If the bank's want of power, under the statute, to make such a contract of purchase, may be pleaded in bar of all claims against it based upon the contract—and we are assuming, for the pur-

poses of this case, that it may be—it is bound, upon demand, accompanied by a tender back of the price it paid, to surrender the bonds to its vendor. The bank, in this case, insisting that it obtained the bonds of the plaintiff in violation of the act of Congress, is bound, upon being made whole, to return them to him. No exemption of immunity from this principle of right and duty is given by the national banking act.".

From the foregoing considerations, the judgment of the trial court is reversed, and the cause is remanded to the district court of Seminole county, with instructions to set aside the judgment heretofore rendered and enter one overruling defendant's demurrer.

All the Justices concur.