## PERKINS v. CISSELL, et al.

No. 1816.   Opinion Filed May 14, 1912.

(124 Pac. 7.)

1. **INDIANS—Contracts—Validity.** A deed and mortgages, executed by a member of the absentee Shawnee Tribe or Band of Indians, of lands allotted to such Indian and held in trust for him by the United States, under Act of Congress Feb. 8, 1887, c. 119, 24 Stat. 388, as amended by Act of March 3, 1891, c. 543, 26 Stat. 1018, are void.

2. **SAME—Lands—Conveyance.** P., a member of the absentee Shawnee Tribe or Band of Indians, while his allotment was held in trust for him by the United States, executed on it certain mortgages and a deed to R. & C. After obtaining fee-simple, unrestricted title, P. conveyed the lands to W. Afterwards P. executed an instrument, attempting to ratify the deed and mortgages of R. & C. Later W. conveyed the lands to Perkins. **Held,** that Perkins took title unincumbered by the mortgages and deed, executed while the land was held in trust, and by the instrument attempting to ratify such mortgages and deed.

3. **VENDOR AND PURCHASER—Bona Fide Purchasers—Notice—Record.** A purchaser of the legal title to lands is not bound to take notice of a registered lien created by any person other than those through whom he is compelled to deraign his title.

4. **HOMESTEAD—Abandonment—Removal—Conveyance.** Where all the proof shows that a person owning lands removes therefrom and continuously lives on other lands in the county for five years, and then executes a deed to the lands, **held,** that such facts make a prima facie case of abandonment of the lands as a homestead.

(Syllabus by Brewer, C.)

*Error from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

Action by Abiel J. Perkins against W. F. Cissell and others. Judgment for defendants, and plaintiff brings error. Reversed, with directions.

*B. B. Blakeney, Frank W. Boggs,* and *Chas. E. Wells,* for plaintiff in error.

*E. C. Stannard, J. H. Wahl,* and *C. H. Ennis,* for defendants in error.

Opinion by BREWER, C. This is a suit to quiet title. Abiel J. Perkins, plaintiff in error, was plaintiff, and Cissell, Riggs, and Clapp, defendants in error, were defendants in the trial court. They will be referred to here as they were called there.

On February 6, 1892, Ca-so-wath-ca-ca, an Indian of the absentee Shawnee Tribe or Band, whose English name was Billy Panther, had issued to him a trust patent to lots 4, 5, and 6 south of north fork of the Canadian river, in section 28, township 10 N., range 4 E., in Pottawatomie county, Okla., under act of Congress approved February 8, 1887, c. 119, 24 Stat. 388.

The allottee executed the following instruments affecting the land: May 20, 1907, a mortgage to Clapp for $33; June 8, 1907, a mortgage to Clapp for $43.25; May 21, 1907, a mortgage to Riggs for $65; July 17, 1907, a mortgage to Riggs for $480; September 4, 1907, a deed to Cissell. The above mortgages and deed were executed at times when all admit that the land was held in trust, and was inalienable.

On October 9, 1907, a patent in fee simple, without restrictions, was issued to the allottee. On October 15, 1907, the allottee executed a warranty deed to Frank Williams. On March 16, 1908, Frank Williams conveyed by warranty deed to the plaintiff. On the same date, the allottee and wife executed, for a nominal consideration stated, a deed to plaintiff. On November 1, 1907, after the allottee had deeded the land to Williams, he executed to Cissell a paper difficult to name or classify, but which defendants treated as an equitable mortgage. This instrument, after naming the parties and acknowledging the execution of the deed of September 4, 1907, to Cissell, and then describing the land, continues:

"* * * And whereas, the said Billy Panther and Eliza Panther did at that time think the fee-simple patent had been issued to said land, did intend to sell and transfer full title to

the said land, but later, on the 15th day of October, 1907, the said grantor, but not his wife, did execute to one Frank Williams a deed to said land, but that said last-named deed was executed to said Frank Williams with the express understanding and agreement that the said Frank Williams had the money in Mr. Searche's bank in Shawnee, Okla., in the amount of $3,500, to pay to said Panther for said land, and said Billy Panther has since learned that said Frank Williams has not now, and did not have, the said sum of $3,500 to his credit in said bank: Now, therefore, we, Billy Panther and Eliza Panther, do hereby agree with said W. F. Cissell and with W. J. Riggs as follows, to wit: It being understood that said W. J. Riggs has paid to the said Billy Panther and wife the sum of $2,625, the receipt of which is hereby acknowledged, said money being paid by said Riggs for L. W. Clapp of Wichita, Kan., and said W. F. Cissell to hold title until all liens and claims have been paid, it is agreed and understood that W. J. Riggs, L. W. Clapp, and W. F. Cissell do hereby agree to and with the said Billy Panther and wife that, in the event said Billy Panther can sell said land for $3,500, or for $3,000, or for any other amount over and above the said sum of $2,625 already paid to them on said land, then, in that event; said W. J. Riggs, L. W. Clapp, and W. F. Cissell do hereby agree that they will pay to said Billy Panther the amount he is able to get for said land over and above the said $2,625, and will help to close up any deal that is possible to close and assist in getting all for the land that any one will pay for same. George F. Graham, of Shawnee, Okla., also having an interest in said land to the amount of $1,138.85, also agrees to assist said Billy Panther in selling said land, and agrees to help to get all for the land that is possible. It is agreed that, in the event said Billy Panther sell the land to any other person or persons than W. F. Cissell, W. J. Riggs, or to George F. Graham, that the amount of $2,625 is to be deducted from the price the land is sold for and paid to W. J. Riggs, for L. W. Clapp, and to George F. Graham, in the amounts as follows, to wit: To W. J. Riggs, for L. W. Clapp, $1,486.15, and to George F. Graham the sum of $1,138.85, and the balance to be paid to or retained by the said Billy Panther, grantee.   *   *   *"

The defendants set up the above contract in their cross-petition and ask that it be declared an equitable mortgage against the lands in favor of defendant Clapp in the sum of $1,486.15, the amount of his interest as disclosed in the contract. To sup-

port this claim, they aver: First. That the deed to Williams, the grantor of plaintiff, was invalid because of fraud against the allottee, and because the wife of grantor did not join in its execution. Second. That plaintiff took title with notice of this contract. Third. That when plaintiff bought the land he assumed the payment of this claim of Clapp's.

The case was tried, by agreement of the parties, by the court, and at the close of the evidence was taken under advisement. Before it was decided, the judge resigned. After his successor was appointed, by stipulation, the transcript of the evidence was submitted to the court, and a general finding was made in favor of defendants, and the instrument, dated November 1, 1907, was declared an equitable mortgage and a lien on the land. A new trial being refused, this appeal is prosecuted by the plaintiff.

The provision of the act of Congress under which the trust patent was issued is part of act approved February 8, 1887, c. 119, 24 Stat. 389, and is as follows:

"Sec. 5. That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefore in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, * * * and that at the expiration of said period the United States will convey the same by patent to said Indian, * * * in fee, discharged of said trust, and free of all charge or incumbrance whatsoever. * * * And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, *such conveyance or contract shall be absolutely null and void.* * * *"

That the various mortgages and the deed, executed while the lands were held in trust under the above statute, were and are absolutely void is beyond question. *Howard v. Farrar*, 28 Okla. 490, 114 Pac. 695·; *Barnes v. Stonebraker*, 28 Okla. 75, 113 Pac. 903; *Bragdon v. McShea*, 26 Okla. 35, 107 Pac. 916;

*Tate v. Gaines,* 25 Okla. 141, 105 Pac. 193, 26 L. R. A. (N. S.) 106; *Lewis v. Clements,* 21 Okla. 167, 95 Pac. 769; *Sanders v. Sanders,* 28 Okla. 59, 117.Pac. 338; *Smith & Steele v. Martin,* 28 Okla. 836, 115 Pac. 866; *Blakemore v. Johnson,* 24 Okla. 544, 103 Pac. 554.

A grantee of an allottee, after restrictions have been removed, may attack deeds executed prior to the removal of restrictions, although such grantee had notice of such deeds. *Simmons v. Whittington,* 27 Okla. 356, 112 Pac. 1018; *Chapman v. Siler,* 30 Okla. 714, 120 Pac. 608.

It is urged here that the instrument of November 1, 1907, used as a basis for the cross-petition, and which, at most, is an attempt, without any new consideration, to ratify and make valid the prior invalid deed and mortgages, is itself invalid for want of power in the allottee to ratify contracts made in violation of the law. This may be, and probably is, true; but, as we view the case, it is not necessary to decide it. For, if the deed to Williams, the grantor of plaintiff, which was made at a time when the allottee had capacity to convey, and which was recorded before the contract of ratification was made, is valid and binding, and had the effect of divesting all of the estate of the allottee in the lands, then whether the contract of ratification is valid or not is immaterial; for if the allottee had no estate in the property no rights were conveyed, and a ratification amounted to nothing. Was the deed to Williams valid? And did it divest the allottee of all the estate he possessed in the lands? There is absolutely no proof that it was other than valid. It was made after all restrictions were removed. It is regular in form. And the proof shows that Williams went into possession under it and rented out the lands. The proof shows that Williams gave his note for the land; when he sold to plaintiff, the allottee was present, and was settled with, and makes no complaint of invalidity in the deed, and is not a party to this suit. It appears that the allottee, after deeding the land to Williams, filed a suit to set the deed aside; but this suit was dismissed with prejudice before plaintiff bought from Williams.

Even if the defendants can set up the invalidity of the deed to Williams, on the ground that he had defrauded the allottee, in a suit in which the allottee is not a party, there is no proof to sustain the claim.

On the question raised by defendants that the deed was invalid, because the wife of the allottee had not signed it, the defendants fail equally in the proof that the land was used as a homestead, which would be the only legal reason for the wife signing the deed. The uncontradicted proof, including the testimony of the allottee, is that he had not lived on the land for six years prior to the trial and five years prior to the deed to Williams. There was not a question asked or a word of evidence offered tending to show that the allottee had ever had the remotest intention of returning to the land and making his home on it. A removal from land upon which a party has been living, and a continuous absence therefrom for five or six years, and a conveyance of the land, would surely make a *prima facie* case of abandonment, and would require proof of an *animus revertendi*. There is no such proof. There can be nothing in this claim; for, under the authorities, if this land was ever the homestead of the allottee, it had been abandoned as such. *Jarvis et ux. v. Moe,* 28 Wis. 440; *Painter v. Steffen,* 87 Iowa, 171, 54 N. W. 229; *Fyffe v. Beers et al.,* 18 Iowa, 4, 85 Am. Dec. 577; *Conway v. Nichols,* 106 Iowa, 358, 76 N. W. 681, 68 Am. St. Rep. 311; *Wapello County v. Brady,* 118 Iowa, 482, 92 N. W. 717; *Kaufman v. Fore,* 73 Tex. 308, 11 S. W. 278; *MacGuire v. Hanson,* 105 Iowa, 215, 74 N. W. 776; 21 Cyc. 599-603, 604-621.

On the question of notice to the plaintiff of this ratification contract, we think it follows, necessarily, that if the allottee had conveyed by valid deed to plaintiff's grantor all his rights and estate in the land, his attempt later to deal with it, and give defendants what they claim was an equitable mortgage, was a mere nullity and out of the line of title. It is true that when plaintiff bought from Williams he also took a deed from the allottee, reciting a nominal consideration; but all the

proof and the circumstances show that this was merely a precautionary measure and unnecessary to his title, and that in fact he bought from Williams.

A purchaser of the legal title to land is not bound to take notice of a registered lien created by any person other than those through whom he is compelled to deraign his title. *Manly v. Pettee,* 38 Ill. 128; *Irish v. Sharp,* 89 Ill. 261; *Miller v. Larned,* 103 Ill. 562; *Williams v. Slaughter* (Tex. Civ. App.) 42 S. W. 327; *Trustees v. Wheeler,* 61 N. Y. 88; *Turman v. Sanford,* 69 Ark. 95, 61 S. W. 167; *Roberts v. Richards,* 84 Me. 1, 24 Atl. 425; *Harper v. Bibb,* 34 Mass. 472, 69 Am. Dec. 397; *Becker v. Stroeher,* 167 Mo. 306, 66 S. W. 1083; *Chowen v. Phelps,* 26 Mont. 524, 69 Pac. 54; 24 A. & E. Ency. L. (2d Ed.) 148.

On the claim made by defendants that at the time plaintiff bought the land he assumed and agreed to pay the debt due defendant Clapp, all the proof is to the contrary. The plaintiff denies it; the interpreter for the allottee denies it. There were several parties present when the deal was closed, and no one intimates, so far as we find after a careful reading of the evidence, that plaintiff made any such agreement. Therefore it seems to us quite clear that the judgment in the case has not sufficient legal proof to support it.

It follows that the court erred in not awarding judgment to plaintiff as requested, and that the cause should be reversed, and judgment entered in favor of plaintiff in accordance with the prayer of his petition.

By the Court: It is so ordered.